IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  CR. NO. 2:05-cr-119-F |
| | ) |
| PAUL HAMRICK, et al. | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANT PAUL HAMRICK'S PRELIMINARY MOTION
TO DISMISS AND CHALLENGE TO THE COMPOSITION OF
PETIT JURY POOLS IN THE MIDDLE DISTRICT OF ALABAMA**

COMES NOW DEFENDANT Paul Hamrick, by and through his undersigned counsel of record, and, pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 *et seq*. the Plan of the United States District Court Middle District of Alabama for the Random Selection of Grand and Petit Jurors, and the Fifth and Sixth Amendments to the United States Constitution, preliminarily moves this Court for entry of an Order dismissing the above-captioned indictment and entry of an Order staying the selection of the petit jury to try the above-captioned Case until the jury selection process in this District is brought into compliance with the Jury Selection and Service Act of 1968, the Plan of the United States District Court Middle District of Alabama for the Random Selection of Grand and Petit Jurors, and the Fifth and Sixth Amendments to the United States Constitution.  In support of this request, Defendant respectfully shows this Court the following:

1

1. Defendant Hamrick has been charged in a second superseding indictment filed in this Court on December 12, 2005. (Doc 61.) Defendant was previously charged in this same matter in a first superseding indictment filed on October 26, 2005. (Doc 9.) Defendant was initially charged in this matter in a sealed indictment filed May 17, 2005. (Doc. 3)

2. Defendant's case is currently set for jury selection on April 19, 2006. Pretrial motions are due February 13, 2006. (Doc. 102.)

3. On information and belief, the indictments naming Defendants were returned by a grand jury or grand juries that were selection from the 2001 Qualified Wheel, which was developed from the 2001 Master Wheel.[1] On information and belief, unless this Court grants Defendant's challenge to the composition of petit jurors, Defendant's case will be tried by a jury selected from the 2005 Qualified Wheel, which is comprised out of the 2005 Master Wheel.

4. These wheels are required to be randomly selected under the provisions of the "Plan of the United States District Court Middle District of Alabama for the Random Selection of Grand and Petit Jurors" (hereinafter "M.D. Jury Plan") which was adopted pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. *et seq.* (hereinafter "JSSA").

---

[1] On information and belief, the Middle District began creation of a new Master Jury Wheel in late 2000. Juries were drawn from a Qualified Jury Wheel which was developed from this Master Wheel beginning sometime in 2001. These will be referred to as the "2001 Master Wheel" and the "2001 Qualified Wheel." A similar process was initiated in late 2004, and jurors began to be selected as a result of this process sometime in 2005. These will be referred to as the "2005 Master Wheel" and the "2005 Qualified Wheel."

5.      As set forth in the sworn statement of James K. Jenkins, counsel for co-Defendant Richard Scrushy, in Doc. No. 104 filed in this case, a copy of which is attached as EXHIBIT A and hereby incorporated, Defendant has a good faith basis to believe that African-Americans from this District may be substantially under-represented. Among jurors selection from the 2001 Qualified Wheel and the 2005 Qualified Wheel. As set forth in Exhibit A, during a period from January 28, 2005 through November 7, 2005, jury panels and pools selected from the 2001 Qualified Wheel and 2005 Qualified Wheel varied from 9.8% African-American to 19.67% African-American, compared with an African-American population in the Middle District of 30.466%. The composition of these panels and pools indicate that a full analysis of the 2001 Qualified Wheel and the 2005 Qualified Wheel can be expected to reflect a similar under-representation of the African-Americans. Such analysis may only be conducted pursuant to full access to the relevant jury records in this District, as requested in Defendant's Motion for Discovery of Jury Records, which is being filed contemporaneously with this preliminary Jury Challenge.

6.      Substantial under-representation of a cognizable group in the community is a violation of the JSSA, the M.D. Jury Plan, and the Fifth and Sixth Amendments to the United States Constitution.

7.      The jury selection system in this District has a history of substantially under-representing African-Americans. *United States v. Clay*, 159 F. Supp. 2d 1357, 1370 (M.D. Ala. 2001) (holding that the jury selection plan of the

Middle District violated the JSSA by tending to exclude African-Americans, a cognizable group of eligible jurors). Defendant respectfully submits that the composition of the jury panels and pools set out in EXHIBIT A indicates that the problems identified by this Court in *Clay* have either not been sufficiently corrected or that *post-Clay*, new problems with the selection process have developed which result in a significant under-representation of African-Americans.

   8.   Contemporaneously with the filing of this Jury Challenge, Defendant Hamrick has filed "Defendant Paul Hamrick's Motion for Discovery of Jury Records" (hereinafter "Discovery Motion"). As set forth in EXHIBIT A, Defendant Scrushy has also retained Dr. James Gundlach, who will supervise the review of jury records and conduct the statistical study of the jury selection process upon entry of an Order by this Court on Defendant's Discovery Motion.

   9.   Upon completion of discovery and Dr. Gundlach's study, Defendant will request leave of this Court to amend this motion to include any grounds relating to defects in the jury selection procedures that may be discovered in this process, and to specify in detail the bases for Defendant's jury challenge. Additionally, at that time, Defendant will request that this Court hold an evidentiary hearing to permit Defendant to submit proof in support of this jury challenge.

## Arguments of Citations of Authorities

### The Jury Selection and Service Act

The JSSA, 28 U.S.C. § 1861 *et seq.*, sets forth the requirements for the maintenance and administration of jury selection plans for the United States Courts. The JSSA embodies two policies.

> It is the policy of the United States that all litigants in federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the co-unity in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.

28 U.S.C. § 1861. The legislative history of the Act indicates that Congress determined that "(t)hese principles provide the best method for obtaining jury lists that represent a cross section of the relevant community and for establishing an effective bulwark against impermissible forms of discrimination and arbitrariness." H.R. Rep. No. 90-1076 (1968) *reprinted* in 1968 U.S.C.CAN. 1792.

The JSSA prohibits discrimination in the selection of juries. It states: "No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862. Section 1863(a) requires that each United States district court "devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives of sections 1861 and 1862 of this title, and that shall otherwise comply with the

5

provision of this title…" The JSSA permits a number of options for the management of the jury selection process, including that it be handled by the Clerk of the court, under the supervision and control of the Chief Judge of the Middle District or a District Judge designated by the Chief Judge. 28 U.S.C. § 1863(b)(1). The JSSA requires that the names of prospective jurors be selected either from voter registration lists or lists of "actual voters," and permits additional sources to be prescribed "where necessary to foster this policy and protect the rights secured by sections 1861 and 1862" of JSSA." 28 U.S.C. § 1863(b)(2).

Under the JSSA, the master wheel must contain proportional representation from each county within the district, to be determined using either "the number of actual voters in the last general election in each count…or the number of registered voters." 28 U.S.C. 1863(b)(3). The JSSA requires that a district court's jury selection plan "specify detailed procedures to be followed by the …clerk in selecting names from the sources." *Id.*. The JSSA requires that whatever procedures are used must be "designed to ensure the random selection of a fair cross section of the persons residing in the community in the district or division where the court convenes." *Id.*

The JSSA requires that there must be "periodic emptying and refilling of the master jury wheel at specified times, the interval for which shall not exceed four years." 28 U.S.C. § 1863(b)(4).

The procedure for enforcing the provisions of the Act is set forth in V.S.C. § 1867. It provides:

> In criminal cases, before the voir dire examination begins, or within seven days after defendant discovered or have discovered, by the exercise of diligence, the grounds therefore, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

28 *V.S.C.* § 1867(a).

"When the JSSA's goals of random selection of juror names or the use of objective criteria for determination of disqualifications, excuses, exemptions, or exclusions are frustrated, the court may find that a substantial violation of the act as taken place." *Clay*, 159 F. Supp. 2d at 1365.

## Middle District Jury Plan

Similarly, the M.D. Jury Plan declares that:

> a.   It is the policy of the United States District Court for the Middle District of Alabama (the "Court") that all litigants in this Court entitled to a trail by jury shall have the right to petit juries selected at random from a fair cross-section of the community in the Division wherein the Court convenes.  In the exercise of its discretion, consistent with Fed. R. Civ. P. 18, the Court has determined that all criminal trials shall be conducted in Montgomery, unless otherwise ordered.  Petit juries for criminal matters and grand juries shall be selected proportionally by Division for the District at Large.
>
> b.   It is further the policy of the Court that all citizens shall have the opportunity to be considered for service on grand and petit juries of the Court and shall have an obligation to serve as jurors when summoned for that purpose.
>
> c.   No citizen shall be excluded from service as a grand or petit juror on account of race, color, religion, sex, national origin, or economic status.

(M.D. Plan at 2, para. 2.)

Further, apparently addressing an issue identified in *Clay* as a cause of the under-representation of African-Americans, *see Clay*, 159 F. Supp. 2d at 1366, the M.D. Jury Plan provides:

> iii.  For each civil or criminal petit jury, the total number of temporarily excused or deferred jurors summoned shall not exceed fifteen percent (15%) of the total number of jurors summoned for civil or criminal petit jury service.

(M.D. Plan at 9, para. 14(d)(ii).)

### Sixth Amendment Right to a Fair Cross-Section

Similarly, the Sixth Amendment to the United States Constitution requires a fair cross-section of the community in the jury selection process. "The presence of a fair cross section of the community on venires, panels, or lists from which petit juries are drawn is essential to the fulfillment of the Sixth Amendment's guarantee of an impartial jury trial in criminal prosecutions." *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 696-98 (1975). "Trial by jury presupposes a jury drawn from a pool broadly representative of the community." *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 66 S.Ct. 984, 989 (1946). There is "an important societal value in assuring diversity of representation on grand and petit juries." *Hobby v. United States*, 468 U.S. 339, 104 S.Ct. 3093, 3095 (1984)(citation omitted).

In *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692 (1975), the Supreme Court held that a law that resulted in the exclusion of women from juries violated

8

the Sixth Amendment's requirement of a jury representing a fair-cross section of the community.  Under the Louisiana law examined in *Taylor*, women are excluded from jury service unless they file a written declaration of their willingness to "opt in" and serve on a jury.  All a result, women constituted fewer than one percent of the names drawn from a jury wheel during one year.  The Court held this law violated the Sixth Amendment.

In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664 (1979), the Supreme Court considered the application of *Taylor* to an "opt out" system available only to women.  The Supreme Court agreed with Duren that his convictions for murder and robbery violated the Sixth and Fourteenth Amendments because the composition of his jury was affected by the application of a Missouri law granting women who so requested an automatic exemption from jury service.

To establish a prima facie violation of the Sixth Amendment fair cross-section requirements, the Court held in *Duren* that a defendant must show that: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the group's numbers in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury selection process.  *Duren*, 99 S.Ct. at 668.  The defendant is not required to prove discriminatory intent on the part of those constructing or administering the jury selection process.  *United States v. Jackman*, 46 F.3d 1240, 1245-1246 (2d Cir. 1995).

In *Duren*, the Court held that a defendant "must demonstrate the percentage of the community made up of the group alleged to be under-represented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement" 99 S.Ct. at 668. Other courts have since held that the pertinent inquiry is the pool of the distinctive group in the district who are eligible to serve as jurors. *United States v. Fike*, 82 F.3d 1315, 1321 (5th Cir. 1996). The *Duren* Court accepted the defendant's six year old census figures as an appropriate benchmark in the absence of any evidence "to suggest that the 1970 census data significantly distorted the percentage of women in Jackson County at the time of trial." 99 S.Ct. at 669.

*Duren* established, through statistics and other evidence, that: (1) the census showed that 54% of the adult inhabitants of Jackson County, Missouri were women; (2) only 26.7% of the persons summoned for jury duty during two separate three month periods were women; and (3) only 14.5% of those who responded to the summons and appeared for jury duty were women. 99 S.C. at 667. The Court held that, taken together, these statistics established a "gross discrepancy between the percentage of women in jury venires and the percentage of women in the community" and that this discrepancy "requires the conclusion that women were not fairly represented in the source from which petit juries were drawn in Jackson County." 99 S.Ct. at 669. The Court also found that Duren's "undisputed demonstration that a large discrepancy occurred not just occasionally but in every weekly venire for a period of nearly a year manifestly indicates that

10

the cause of the under representation was systematic, that is, inherent in the particular jury selection process utilized." 99 S.Ct. at 669.

The Court also noted that Duren had established "when in the selection process the systematic exclusion took place." 99 S.Ct. at 669. It did not occur at the first stage of the jury selection process, which the Court defined as "the questionnaire canvass of persons randomly selected from the relevant voter registration list." 99 S.Ct. at 669. Rather, the court inferred from the low percentage (less than 30%) of women among those summoned for jury duty that the qualified wheel must contain a lower percentage of women. [2] The Court noted that this percentage was further reduced at the summons stage, when women were again given another opportunity to claim the exemption and, if they failed to respond to the summons, were presumed to have claimed exemption. 99 S.Ct. at 670. "Thus, the percentage of women at the final, venire state (14.5%) was much lower than the percentage of women who were summoned for service (26.7%)." 99 S.Ct. at 670. The Court held that "the resulting disproportionate and consistent exclusion of women from the jury wheel and at the venire stage was quite obviously due to the *system* by which juries were selected." 99 S. Ct. at 670 (emphasis included in original).

Having found that Duren had demonstrated a prima facia case of a violation, the Court held that the state then acquired the burden of "justifying this

---

[2] The Court stated, "The first sign of a systematic discrepancy is at the next state-the construction of the jury wheel from which persons are randomly summoned for service. Less than 30% of those summoned were female, demonstrating that a substantially larger number of women answering the questionnaire claimed either ineligibility or exemption from jury service." 99 S.Ct. at 669-670

infringement by showing attainment of a fair cross section to be incompatible with a significant state interest." 99 S.Ct. at 671.

The Supreme Court "has never pronounced an immutable threshold disparity that a defendant mush show" to establish a Sixth Amendment violation. *United States v. Tuttle,* 729 F.2d 1325, 1327 (11th Cir. 1984). However, the Eleventh Circuit "has consistently required an absolute disparity of at least 10% between the under-represented group's proportion of the general or eligible population and its representation on the venire before a prima facia case is established." *Id.; United States v. Grisham*, 63 F.3d 1074, 1078-79 (11th err. 1995).

## Fifth Amendment Right to Due Process

Arbitrary exclusion from jury selection and service of an identifiable segment of the co-unity also violates the Fifth Amendment right to due process. In *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163 (1972), the Supreme Court held that a systematic exclusion of African-Americans from the grand jury and petit jury which tried and convicted the white petitioner Peters of burglary would deprive Peters of due process, and remanded the case for further evidentiary hearing. 92 S.Ct. at 2170.

Although the Justices did not clearly agree on a comprehensive statement of this rule, the case seems to establish these elements for a due process challenge: (1) a jury procedure; (2) which arbitrarily excludes from jury service, (3) a large and identifiable segment of the co-unity. *See* opinion of Marshall, J. ("[W]hatever

12

his race, a criminal defendant has standing to challenge the system used to select his grand…jury, on the ground that it arbitrarily excludes…members of any race, and thereby denies him due process of law"), 92 S.Ct. at 2169; concurring opinion of White, J., joined by Brennan and Powell, JJ., ("[T]he strong statutory policy of [18 U.S.C.] §§243, which reflects the central concern of the Fourteenth Amendment" permits a white defendant to challenge discrimination in grand jury selection).

In reaching its conclusion that the systematic exclusion, of African-Americans violated the white defendant's rights, the Court observed that "(a) fair trial in a fair tribunal is a basic requirement of due process." 92 S.Ct. at 2168. The Court reviewed the parameters of due process as expressed in trial procedures and noted that the right to due process includes the "right to a competent and impartial tribunal;" to jurors who are not "incapable of rendering an impartial verdict, based on the evidence and the law;" and to the prohibition of "circumstances that create the likelihood or the appearance of bias." 92 S.Ct. at 2168. The Court concluded:

> These principles compel the conclusion that a State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States, illegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process. They create the appearance of bias in the decision of individual cases, and they increase the risk of actual bias as well. 92 S.Ct. at 2168.

In declining to confine the remedy for this violation only to cases involving African-American defendants or to particular cases in which race may present an issue, the Court observed:

> When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable it is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have an unsuspected importance in any case that may be presented.

92 S.Ct. at 2169. Accordingly, the Court held that, "whatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law." 92 S.Ct. at 2169.

In the *Peters* case, the Supreme Court found that Peters had established a prima facia case of a due process violation, since he had established that the jury lists in Muscogee County, Georgia were made up from the tax digests, which were by law segregated according to race, and that the jury lists contained a disproportionately smaller number of African-Americans that were present in the population or in the tax digests. 92 S.Ct. at 2165 n. 3. The Court did not identify or discuss the particular number of African-Americans in the community, or the amount of the statistical disparity between the community and the jury lists, or the causes for the limitations in the numbers of African-Americans in the tax digests or the jury lists. Thus, by implication, the particular benchmark of the population

14

and the extent of the under-representations are not important to a Due Process challenge where consistent under-representation due to an arbitrarily chosen source list that under-represents an identifiable segment of the community is shown.

### Fifth Amendment Right to Equal Protection

Finally, a defective jury selection process may also violate the Equal Protection Clause of the Fifth Amendment. The appropriate analysis for a Fifth Amendment equal protection claim is the same analysis as that for a Fourteenth Amendment equal protection claim. *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 670 (1976) (challenge to Federal Election Campaign Act).

The three-part test for the establishment of a prima facia case of an equal protection violation in the context of a challenge to the jury selection process requires: (1) the group alleged to be excluded from the selection process is one which is distinct and recognizable, and capable of being singled out for discriminatory treatment; (2) members of this group are substantially under-represented; and (3) the selection procedure is susceptible to abuse and provides an opportunity for discrimination. *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280 (1977).

"Although the prima facia case for an equal protection claim resembles the elements of a fair cross-section claim, the purpose of an equal protection claim is to determine whether the disparity in the jury venire is the result of a discriminatory purpose … Thus, whereas the inquiry in a fair cross-section claim

15

focuses on the representativeness of the jury venire, the focus of an equal protection claim is whether members of a discrete group have been intentionally denied the opportunity to serve on a jury." *United States v. Grisham*, 63 F.3d 1074, 1081 (11th Cir. 1995).

An equal protection violation in jury selection may be established by (a) a statistical showing that a distinctive group has been substantially under-represented on the venire over a period of time, *Batson v. Kentucky*, 476 U.S. 79, 95, 106 S.Ct. 1712, 1722, (1986) (explaining the elements of a prima facie case set forth in *Castaneda,* 430 U.S. at 494, 97 S.Ct. at 1280); (b) in other ways, *Cassell v. Texas*, 339 U.S. 282, 290, 70 S.Ct. 629, 633 (1950)(plurality)); or (c) upon a showing that members of a particular group were substantially under-represented from the particular venire from which the jury was drawn and that this venire was selected under a practice providing an opportunity for discrimination. *Washington v. Davis*, 426 U.S. 229, 241, 96 S.Ct. 2040, 2048 (1976).

A statistical showing of a disparity sufficiently large over a significant period of time will establish that it is unlikely that the disparity is due to chance of accident. In the absence of evidence to the contrary, a court should conclude that race or other improper class-related factors entered into the selection process. *Jefferson v. Morgan*, 962 F.2d 1185, 1180 (6th Cir. 1992).

Once a defendant has established a prima facie case, the burden shifts to the state to rebut or dispel the inference of intentional discrimination. *Castaneda v. Partida*, 97 S.Ct. at 1280-81.

A defendant in a criminal proceeding also has standing to raise the violation of rights of potential jurors who have been improperly excluded from jury duty. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364 (1991). The defendant has an interest in "neutral jury selection procedures," 111 S.Ct. at 1371; both the defendant and improperly excluded jurors have an interest in eliminating discrimination in jury selection and in ensuring the integrity of the judicial system, 111 at 1368, 1372; and, as a practical matter, individual potential jurors may be unaware of and in any event rarely bring challenges on their own behalf, 111 S.Ct. at 1372. When the court's jury selection plan discriminates against an identifiable group of citizens, both the defendant and the excluded citizens suffer injury: the defendant is denied a neutral jury selection procedure and the excluded citizens are denied the opportunity to participate in an important civic requirement. 111 S.Ct. at 1368-69, 1370-71.

Defendant respectfully submits that the procedures employed for the selection of grand jurors and petit jurors in the Middle District of Alabama must be in compliance with the foregoing statutory and Constitutional requirements. Based on Defendant's initial investigation, Defendant has a good faith belief that the procedures currently in place in the Middle District of Alabama do not meet these requirements and that as a result of these deficiencies, African-Americans from this District are systematically and substantially under-represented in the jury wheels, pools, and panels that are selected in this District.

WHEREFORE, Defendant respectfully prays that this Court enter an Order:

      a.    granting him leave to conduct discovery in support of this Jury Challenge as requested in his separately filed Motion for Discovery of Jury Records;

      b.    granting him an opportunity to amend and supplement this preliminary Jury Challenge after he has completed discovery and analysis of the records and materials relating to the jury selection process;

      c.    granting him an evidentiary hearing and an opportunity for additional briefing after any evidentiary hearing;

      d.    upon good cause shown, dismissing the indictment against him;

      e.    upon good cause shown, granting Defendant's Jury Challenge and staying selection of the petit jury in this case until the jury selection procedures in this District are brought into compliance with the law and Constitution; and

      f.    such other and further relief as this Court may deem just and proper.

Respectfully submitted this the 30th day of January, 2006.

/s/RONALD W. WISE, WISE0904
2000 Interstate Park Drive
Suite 105
Montgomery, Alabama 36109
Telephone: (334) 260-0003
Fax: (334) 260-8005
E-Mail: ronwwise@aol.com

**CERTIFICATE OF SERVICE**

   I do hereby certify that on January 30, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                /s/ Ronald W. Wise