IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. 05-00119-MEF |
| | * | |
| PAUL MICHAEL HAMRICK | * | |

**MOTION TO DISMISS THE "HONEST SERVICES" CHARGES
IN COUNTS ONE, TWO, AND TEN THROUGH FOURTEEN**

Mr. Hamrick served the State of Alabama honestly and well. The prosecution's deprivation-of-honest-services charges under 18 U.S.C. § 1346 are factually false. They allege things that did not happen.

The prosecution's honest services charges also are legally flawed, in at least two respects. Among other things, they charge Mr. Hamrick with violating 18 U.S.C. § 1346 over a period of time during much of which he was a private citizen and did not work for the State of Alabama. Under established case law, private citizens in Mr. Hamrick's circumstances cannot be charged with a § 1346 violation vis-a-vis the public. If it were otherwise, there would be "a catch-all political crime which has no use but misuse," as both the Third Circuit and the Northern District of Illinois have noted.

Mr. Hamrick therefore respectfully requests that the Court dismiss him entirely from Counts Ten through Fourteen, and that it dismiss Counts One and Two to the extent that they rely on the honest services charges discussed below.

**I. Argument**

**A. The Allegations: Mr. Hamrick As A Private Citizen**

As the second superseding indictment correctly states, Mr. Hamrick was out of government service from "on or about May 8, 1998" until "on or about January 19, 1999."

*Second Superseding Indictment* ¶ 1(d). He returned to service in Governor Siegelman's office "on or about January 19, 1999" and then left government service for good on June 30, 2001. *Id.*

Racketeering Acts 2(c)-(o) and Counts Ten through Fourteen purport to allege 18 U.S.C. § 1346 violations in which, the prosecution contends, Mr. Hamrick was directly involved. Those allegations encompass significant portions of time in which Mr. Hamrick was out of government service.

Specifically, the purported honest services "scheme" alleged in Racketeering Acts 2(c)-(o) lasted "[f]rom in or about August 1997 to on or about January 20, 2003." *Second Superseding Indictment* ¶ 28. Mr. Hamrick was out of government service for approximately two years and four months of that period. The "influence" the prosecution contends Mr. Hamrick exerted on the Cherokee County Commission occurred "between 11/3/98 and 1/31/99," *id.* ¶ 30(g), during most of which time Mr. Hamrick was a private citizen. The "influence" the prosecution contends he exerted on the unnamed "waste disposal business" occurred "between July 1998 and 7/15/99," *id.*, during much of which time Mr. Hamrick was a private citizen. The second superseding indictment does not state when the prosecution contends Mr. Young gave Mr. Hamrick "directly and indirectly" the alleged $46,000. *Id.* ¶ 30(f). The mailings alleged in Racketeering Acts 2(c), 2(f), and 2(g), and the wire alleged in Racketeering Act 2(h) occurred, according to the prosecution, on December 2, 1998, January 15, 2002, January 14, 2003, and December 7, 1998 respectively, when Mr. Hamrick was a private citizen. *Id.* ¶¶ 31, 33. The allegations in Counts Ten Through Fourteen are substantively the same as the allegations in Racketeering Acts 2(c)-(o). *Id.* ¶¶ 61-65. Counts Eleven and Twelve allege mailings that occurred after Mr. Hamrick left government service. *Id.* ¶ 63.

Count Two also alleges a number of honest services racketeering acts in which the prosecution does *not* contend Mr. Hamrick was directly involved. Racketeering Acts 1(c)-(e) and 5(e)-(kk) involve allegations about Governor Siegelman, Mr. Scrushy, and Director Roberts. They say nothing about Mr. Hamrick. Mr. Hamrick is charged with them only because he is alleged to be a conspirator in the broad RICO charge. *Second Superseding Indictment* ¶¶ 17-22, 43-46.

These alleged racketeering acts also occurred over a period that includes a substantial portion of time in which Mr. Hamrick was a private citizen. The honest services "scheme" alleged in Racketeering Acts 1(c)-(e) allegedly occurred "[f]rom on or about November 3, 1998 . . . through on or about January 20, 2003." *Superseding Indictment* ¶ 17. The honest services "scheme" alleged in Racketeering Acts 5(e)-(kk) allegedly occurred "[f]rom on or about October 15, 1998. . . through on or about January 20, 2003." *Id.* ¶ 43.

### B. The Law

It is important to note that the second superseding indictment charges Mr. Hamrick with violation of a duty to render his honest *governmental* services to the public, as opposed to a duty to render honest *commercial* services to a governmental entity. The Eleventh Circuit has drawn a clear distinction between these two kinds of honest services cases. *United States v. deVegter*, 198 F.3d 1324, 1328 and n.3 (11th Cir. 1999) (distinguishing between a charge that a defendant "deprived the *public* of honest governmental services" and a charge that he "deprived *Fulton County* of honest *commercial* services by providing corrupted financial advice") (emphasis in original).

Two federal courts have held that private citizens, even those closely connected to

government operations, cannot be charged or convicted under § 1346 for depriving the public of their own honest *governmental* services. *United States v. Murphy*, 323 F.3d 102, 113-18 (3d Cir. 2003); *United States v. Warner*, 292 F. Supp.2d 1051, 1063 (N.D. Ill. 2003). Those courts held that private citizens owe no duty of honest governmental services to the public in the first place, and thus cannot be charged with or convicted of violating such a duty. *Id.* These decisions and the Eleventh Circuit's decision on a similar issue in *United States v. deVegter*, 198 F.3d at 1328-30, (though *deVegter* is not directly on point), compel the conclusion that Mr. Hamrick cannot be so charged under the circumstances of this case.

The courts' reasoning is grounded in the development of the doctrine of honest services fraud. A review of that development makes plain that the charges against Mr. Hamrick, during the period he was a private citizen, cannot stand.

1. Development of the Honest Services Doctrine Before 1987

Before 1987, the doctrine was judge-made, and developed unevenly across the circuits.[1] The circuits, relying on a 1909 amendment to the mail fraud statute,[2] agreed generally that a deprivation of honest services could constitute mail or wire fraud.[3] Over time, they came to

---

[1] *See, e.g., United States v. Brumley*, 116 F.3d 728, 733 (5th Cir. 1997) (collecting cases showing uneven development of the doctrine before 1987).

[2] *Act of Mar. 4, 1909, ch. 321, § 215, 35 Stat. 1130.* The circuits believed this act expanded the mail fraud statute's scope beyond deprivations of money or property. *See, e.g., United States v. Clapps*, 732 F.2d 1148, 1152 (3d Cir. 1984).

[3] *See, e.g., United States v. Clapps*, 732 F.2d 1148, 1152-53 (3d Cir.) *cert. denied* 469 U.S. 1085 (1984); *United States v. Bohunus*, 628 F.2d 1167, 1172 (9th Cir.) *cert. denied* 447 U.S. 928 (1980); *United States v. Isaacs*, 493 F.2d 1124, 1149-50 (7th Cir.) *cert. denied Kerner v. United States*, 417 U.S. 976 (1974) ; *United*

agree generally that such deprivations fell into four categories: (1) government officials who defraud the public of their own honest services;[4] (2) elected officials and campaign workers who falsify votes and thus defraud the electorate of its right to an honest election;[5] (3) private actors who violate fiduciary duties to private employers by, for example, taking kickbacks;[6] and (4) private actors who deprive other private persons of intangible rights like privacy.[7]

---

*States v. States*, 488 F.2d 761, 764-67 (8th Cir. 1973), *cert. denied* 417 U.S. 909 (1974); *Bradford v. United States*, 129 F.2d 274, 276 (5th Cir.), *cert. denied*, 317 U.S. 683 (1942).

[4] *See, e.g., United States v. Holzer*, 816 F.2d 304 (7th Cir.) (county trial judge), *vacated in light of McNally*, 484 U.S. 807 (1987); *United States v. Silvano*, 812 F.2d 754 (1st Cir. 1987) (city budget director); *United States v. Barber*, 668 F.2d 778, 784 (4th Cir.) (alcoholic beverage control commissioner), *cert. denied* 459 U.S. 829 (1982); *see generally McNally v. United States* 483 U.S. 350, 362-63 & n.1 (1987) (Stevens, J. dissenting) (collecting cases). This set of cases included some in which private persons were convicted of conspiring with a public official to deprive the public of the public official's honest services. *See, e.g., United States v. Lovett,* 811 F.2d 979 (7th Cir. 1987) (bribing mayor); *United States v. Rauhoff*, 525 F.2d 1170 (7th Cir. 1975) (bribing Secretary of State). A proper reading of the second superseding indictment makes plain that the charge against Mr. Hamrick here is that he deprived the public of his own honest governmental services, including during the periods in which he was a private citizen.

[5] *See, e.g., United States v. Girdner*, 754 F.2d 877 (10th Cir. 1985) (candidate for state legislature); *see generally McNally v. United States*, 450 U.S. 350, 363-64 & n. 2 (1987) (Stevens, J. dissenting) (collecting cases).

[6] *See, e.g., United States v. Boffa*, 688 F.2d 919, 925-26 (3d Cir. 1982); *United States v. Curry*, 681 F.2d 406 (5th Cir. 1982); *United States v. Von Barta*, 635 F.2d 999 (2d Cir. 1980); *see generally McNally v. United States*, 450 U.S. 350, 363-64 & n. 3 (1987) (Stevens, J. dissenting) (collecting cases).

[7] *See, e.g., United States v. Condolon*, 600 F.2d 7 (4th Cir. 1979); *United States v. Louderman*, 576 F.2d 1383 (9th Cir.), *cert. denied*

2.  Pre-1987 Disagreement Over the Source of the Honest Services Duty

But, within that general agreement, there was considerable disagreement about what the doctrine actually forbade.[8] The circuits' disagreement principally was over what the source of the duty to render honest services must be.  Must the defendant's duty to render honest services be rooted in state law (and, if so, what portions of state law), or could the federal courts impose upon a defendant the obligation to render honest services to a state?  The *en banc* United States Court of Appeals for the Fifth Circuit explained the nature of this pre-1987 disagreement as follows in *United States v. Brumley*, 116 F.3d 728, 733-34 (5th Cir. 1997):

> A close look at these [pre-1987] cases uncovers two uncertainties regarding the draw by this federal statute upon state law, specifically in defining the statutory element of honest services.  First, must the services be owed under state law?  Second must the breach of a duty to provide services rooted in state law violate the criminal law of the state?

3.  McNally and Congress's Response

This debate briefly was put on hold in 1987 when, in *McNally v. United States*, 483 U.S. 350, 358-59 (1987), the United States Supreme Court held that the circuits' original premise was wrong.  The Supreme Court held that the 1909 amendment to the mail fraud statute did not extend its scope beyond deprivations of money or property.  *Id.*  There was no longer a basis for honest services charges of any kind.  Congress quickly responded to *McNally* by enacting, in

---

439 U.S. 896 (1978); *see generally McNally v. United States*, 450 U.S. 350, 363-64 & n. 3 (1987) (Stevens, J. dissenting) (collecting cases).  *United States v. Rybicki*, 354 F.3d 124, 138-39 n. 13 (2d Cir. 2003) expressed some doubt about whether *Condolon* and *Louderman* actually represent a separate line of cases or were "honest services" cases at all.

[8]   *Brumley*, 116 F.3d at 733 (listing cases applying the doctrine differently).

6

1988, 18 U.S.C. § 1346, which defines "scheme or artifice to defraud" in §§ 1341 and 1343 to include "a scheme or artifice to deprive another of the intangible right of honest services."

### 4. Source of Duty Debate under § 1346

Congress's action resurrected the source-of-duty debate. That debate now occurs in the context of statutory interpretation of § 1346 instead of application of the pre-1987 judge-made doctrine.[9]

The crux of the debate is the effort to find a source of duty that is sufficiently knowable that § 1346 is not unconstitutionally vague. Judge Posner, writing for the Seventh Circuit, explained:

> It can be argued that tying the concept of fraud in the mail fraud statute to state law and to federal statutes expressly creating fiduciary duties would allay the persistent concerns about the breadth and vagueness of the statute. Against this it can be argued that a uniform albeit judge-made federal concept of fiduciary duty might do the trick as well or better – but the riposte is that a century of interpretation of the statute has failed to still the doubts of those who think it dangerously vague.

*United States v. Martin*, 195 F.3d 961, 967 (7th Cir. 1999).

For example, the Fifth Circuit, in *Brumley*, held that – at least for prosecutions of state officials for breaching a duty of honest governmental services – the duty must be rooted in state law:

> We find nothing to suggest that Congress was attempting to garner to the federal

---

[9] The circuits are not clear about whether "honest services" means precisely the same thing under § 1346 as it meant under the pre-1987 judge-made doctrine. *See, e.g., United States v. Brumley*, 116 F.3d at 733 ("Congress could not have intended to bless each and every pre-*McNally* lower court 'honest services' opinion"); *United States v. Frost*, 125 F.3d 346, 364 (6th Cir. 1997) ("§1346 has restored the mail fraud statute to its pre-*McNally* scope").

>government the right to impose a federal vision of appropriate services – to establish, in other words, an ethical regime for state employees. Such a taking of power would sorely tax separation of powers and erode our federalist structure. Under the most natural reading of the statute, a federal prosecutor must prove that conduct of a state official breached a duty respecting the provision of services owed to the official's employer under state law. Stated directly, the official must act or fail to act contrary to the requirements of his job under state law. This means that if the official does all that is required under state law, alleging that the services were not otherwise done "honestly" does not charge a violation of the mail fraud statute. The statute contemplates that there must first be a breach of a state-owed duty.

*United States v. Brumley*, 116 F.3d at 734.

The Eleventh Circuit, by comparison, maintains that the duty to render honest services may be federally-imposed. But it imposes different duties based on its distinction between public sector honest services fraud and private sector honest services fraud. The pleading and proof requirements in private sector fraud cases are significantly more stringent. *DeVegter* held that public officials "inherently owe a fiduciary duty to the public" to render honest governmental services, but that private citizens do not have such inherent duties. Rather, "'the prosecution must prove that the [private] employee intended to breach a fiduciary duty, and that the employee foresaw or reasonably should have foreseen that his employer might suffer an economic harm as a result of the breach.'" 198 F.3d at 1329 (citing decisions in other circuits with approval). That is, private citizens' "honest services" duties must be rooted in a specific fiduciary duty they have good reason to know exists, including duties under contractual or common law, *and* must involve reasonably foreseeable economic harm.

>The meaning of the "intangible right of honest services" has different implications, however, when applied to public official malfeasance and private sector misconduct. Public officials inherently owe a duty to the public to make governmental decisions in the public's best interest. "If the official instead secretly makes his decision based on his own personal interests – as when an official accepts a bribe or personally benefits from an undisclosed conflict of

8

>    interest – the official has defrauded the public of his honest services."
>
>    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*
>
>    On the other hand, such a strict duty of loyalty ordinarily is not part of private sector relationships. Most private sector interactions do not involve duties of, or rights to, the "honest services" of either party. Relationships may be accompanied by obligations of good faith and fair dealing, even in arms-length transactions. These and similar duties are quite unlike, however, the duty of loyalty and fidelity to purpose required of public officials. For example, "employee loyalty is not an end in itself, it is a means to obtain and preserve pecuniary benefits for the employer. An employee's undisclosed conflict of interest does not necessarily pose the threat of economic harm to the employer." A public official's undisclosed conflict of interest, in contrast, does by itself harm the constituent in the end for which the official serves – honest government in the public's best interest. The "intangible right of honest services" must be given an analogous interpretation in the private sector. Therefore, for a private sector defendant to have violated the victim's right to honest services, it is not enough to prove the defendant's breach of loyalty alone. Rather, as is always true in a breach of loyalty by a public official, the breach of loyalty by a private sector defendant must in each case contravene – by inherently harming – the purpose of the parties' relationship. . . . Thus, a private sector violation of § 1346 honest services fraud involves a breach of fiduciary duty and reasonably foreseeable economic harm.

*United States v. deVegter*, 198 F.3d 1324, 1328-30 (11th Cir. 1999) (citations omitted). The court held that a private citizen – rendering *commercial* services to a state government entity – could be held liable under 18 U.S.C. § 1346, but *only under the private sector standard*. *Id.* at 1330-31.

### 5. Does A Private Citizen Owe The Public A Duty To Render Honest Governmental Services

This case does not involve a private person rendering commercial services to state government. The question here is whether Mr. Hamrick, as a private citizen, owed the public a duty to render honest *governmental* services. The two post-*McNally* federal courts that have addressed the question squarely have held that private citizens do not owe the public such a duty.

9

In *United States v. Murphy*, 323 F.2d 102 (3d Cir. 2003), the defendant was a county Republican party chairman who effectively controlled decisions by the county commission regarding county contracts. The prosecution alleged that he solicited bribes in exchange for his decisions and influence regarding those contracts, and that he thus violated his duty of honest governmental services to the public. The Third Circuit held that, as a private citizen, he owed no such duty:

> [T]he Government cannot identify any clearly established fiduciary relationship or legal duty in either federal or state law between Murphy and Passaic County or its citizens. In other words, it cannot point to an established "right" of honest services that Murphy owed to the County or its citizens[.][10]. . . Without any legal basis for determining whether Passaic County or its citizens had a right to Murphy's honest services, we conclude that it was improper for the District Court to allow the jury to conjure such a duty out of a fog of assumptions.

*Id.* at 117.

In *United States v. Warner*, 292 F. Supp.2d 1051 (N.D. Ill. 2003), the defendant was a "close confidant of a high-ranking Illinois Secretary of State Office official." 292 F. Supp. at 1053. He performed a number of tasks for the Secretary of State Office, including serving on a transition team. *Id.* But he remained a private citizen. The prosecution alleged that his influence was such that he controlled various decisions by the Secretary of State Office. It charged him with violating his duty to render honest governmental services to the public by soliciting bribes in exchange for his exercise of that control. *Id.* at 1052-56. The Northern

---

[10] The Third Circuit rejected the notion that the general New Jersey Bribery Act imposed such a duty. 323 F.3d at 117. "We cannot endorse this methodology because all criminal activity would breach a duty to the public not to break the law that could then form the basis for a mail fraud conviction." *Id.*

District of Illinois dismissed that portion of the indictment, holding that the defendant owed no such duty:

> Given the concerns expressed in this and other Circuits regarding [§ 1346's vagueness in light of the source-of-duty debate], the court reluctantly concludes that Warner cannot be charged with defrauding the public of his own honest services because he was a private citizen who did not owe such a fiduciary duty to the citizens of Illinois or to the SOS Office. . . . [T]he court finds that there is insufficient basis for treating public and private individuals the same way for purposes of "honest services" mail fraud.

292 F. Supp.2d at 1063.

Both *Murphy*, 323 F.3d at 113-18, and *Warner*, 292 F. Supp. at 1059-60, rejected a pre-*McNally* Second Circuit opinion, *United States v. Margiotta*, 688 F.2d 108 (2d Cir. 1982). The Second Circuit had held that a county Republican party chairman who allegedly exercised a "vise-like grip over" governmental decisions, *id.* at 116, so that "everything went through his hands," *id.* at 118, dictating everything relating to hiring, salaries, and promotions, and controlling lucrative insurance matters, could be charged with pre-*McNally*, judge-made honest services fraud, for depriving the public of his honest governmental services. 688 F.2d at 124-28. The *Margiotta* court held that the jury could infer a duty of honest governmental services, because the defendant had de facto control over county government decisions. *Id.*

The Northern District of Illinois in *Warner* put the question as "whether a *Margiotta* theory of mail fraud remains viable" after *McNally*. 292 F. Supp.2d at 1058. It held that such a theory is *not* viable, given the circuits' expressed need to root a private citizen's duty in something more substantial than an inference based on a de facto relationship. "The court is not persuaded . . . that such general agency principles are sufficient to charge Warner, a private individual, with defrauding the public of his 'honest services.'" 292 F. Supp. at 1059. It quoted

11

the *Margiotta* dissent with approval, for the proposition that "there is 'no logical rationale for treating private party officials in the same manner as public officials since such a loose interpretation of the mail fraud statute creates a catch-all political crime which has no use but misuse.'" *Id.* at 1059-60.

The Third Circuit in *Murphy* reached the same conclusion. After noting that the *Margiotta* panel "approved a gestalt approach" that "allowed the jury to derive a fiduciary duty" based on whether others relied on the defendant because of his "special relationship" with the government and whether he had de facto control of governmental decisions, 323 F.3d at 112, the Third Circuit held that a private person's post-*McNally* honest services duty must have more substantial roots. While it declined the defendant's request to hold that the duty must be rooted in state law, the Third Circuit held that it must have *some* clear root – that "either state or federal law [must] clearly establish[] a fiduciary relationship." 323 F.3d at 117. Because the prosecution could not point to any such duty, the honest services charge could not stand. *Id.*

The Eleventh Circuit has not squarely addressed this issue. Footnote 3 in *deVegter,* quoted above, made passing reference to *Margiotta* without mentioning it by name or discussing it. In distinguishing between public sector and private sector honest services fraud, the Eleventh Circuit said:

> Public sector honest services fraud falls into two categories. First, "a public official owes a fiduciary duty to the public, and misuse of his office for private gain is a fraud." *McNally*, 483 U.S. at 355, 107 S. Ct. 2875. Second, "an individual without formal office may be held to be a public fiduciary if others rely on him because of a special relationship in the government and he in fact makes governmental decisions." *Id.* (quotation omitted).

The Eleventh Circuit's citations for this footnote were to the portion of *McNally* that summarized the circuit court's holding in that case. The Supreme Court noted that the circuit

12

court had relied on *Margiotta* to hold that one of the defendants – a private citizen who allegedly had de facto control over the governmental decision at issue – could be charged with pre-*McNally,* judge-made honest services fraud. 483 U.S. at 355.[11] The Supreme Court did *not* hold that *Margiotta* remained good law after *McNally*. Indeed, *McNally* reversed the circuit court decision, including the portion that relied on *Margiotta*. 483 U.S. at 355.

Under these circumstances, Mr. Hamrick respectfully submits that a *Margiotta* theory is

---

[11] This portion of the Supreme Court's opinion in *McNally*, including the quotes in the *deVegter* footnote, reads in its entirety:

> In affirming the substantive mail fraud conviction, the court relied on a line of decisions from the Courts of Appeals holding that the mail fraud statute proscribes the scheme to defraud citizens of their intangible rights to honest and impartial government. *See, e.g., United States v. Mandel,* 591 F.2d 1347 (4th Cir. 1979), *aff'd in relevant part*, 602 F.2d 653 (en banc), cert. denied, 445 U.S. 961, 100 S. Ct. 1647, 64 L.Ed.2d 236 (1980). Under these cases, a public official owes a fiduciary duty to the public, and misuse of his office for private gain is a fraud. Also, an individual without formal office may be held to be a public fiduciary if others rely on him "'because of a special relationship in the government'" and he in fact makes governmental decisions. 790 F.2d at 1296 (quoting *United States v. Margiotta*, 688 F.2d 108, 122 (2d Cir. 1982), cert. denied 461 U.S. 913, 103 S. Ct. 1891, 77 L.Ed.2d 282 (1983)). The Court of Appeals held that Hunt was such a fiduciary because he "substantially participated in governmental affairs and exercised significant, if not exclusive, control over awarding the workmen's compensation insurance carrier contract to Wombwell and the payment of monetary kick-backs to Seton." 790 F.2d at 1296. We granted certiorari, 479 U.S. 1005, 107 S. Ct. 642, 93 L.Ed.2d 698 (1986), and now reverse.

13

not viable in the Eleventh Circuit either. The *deVegter* footnote does not reflect studied consideration of the issue. Undersigned counsel's research indicates that the issue has never been squarely presented to the Eleventh Circuit. And the rest of the *deVegter* opinion is consistent with the rulings in *Murphy* and *Warner*. *DeVegter* drew a distinction between public actors and private actors for purposes of honest services fraud, and imposed more stringent source-of-duty requirements on the prosecution when dealing with private actors. Like *Murphy* and *Warner*, *deVegter* required, as discussed above, the prosecution to locate a firm, knowable anchor for a private actor's duty to render honest services. *Murphy* and *Warner* could not find such an anchor justifying the imposition of a duty on private actors to the public to render honest governmental services. *DeVegter* specified the circumstances under which such an anchor might be found for a private actor rendering private-sector *commercial* services, but it did not address how such an anchor might be found when the prosecution charges a private actor with rendering governmental services. Mr. Hamrick respectfully submits that there is no such anchor.

In the end, however, it does not matter whether *Margiotta* is viable in the Eleventh Circuit or not. There is no allegation – nor could there be – that Mr. Hamrick, when he was a private citizen, had the "special relationship" or "de facto control" over governmental decisions that the defendants in *Margiotta*, *Murphy*, and *Warner* allegedly had. Indeed, as the prosecution concedes, from June 30, 2001 forward, he was *retired* from government service. *Second Superseding Indictment* ¶ 1(d). During the period from May 8, 1998 until January 19, 1999, when Mr. Hamrick also was a private citizen, then-Lieutentant Governor Siegelman was campaigning for the office of Governor and, after he won, was engaged in the transition. There is no allegation, nor could there be, that, during this period, either Mr. Hamrick or anyone

14

dealing with him knew what the outcome of the gubernatorial election would be or what the issues would be if/when Mr. Hamrick ever assumed office.

## II. CONCLUSION

For at least the foregoing reasons, Mr. Hamrick respectfully requests that the Court dismiss each of these honest service charges to the extent that they involve acts allegedly committed while he was a private citizen.

Respectfully submitted,


s/T. Jefferson Deen, III
T. Jefferson Deen, III
T. Jefferson Deen, III, P.C.
P.O. Box 2705
Mobile, Alabama 36652
Phone: (251) 433-5860
Fax:   (251) 433-0703
E-mail: TJeffDeen@deenlawpc.com


s/Michel Nicrosi
Michel Nicrosi
Miller, Hamilton, Snider & Odom, L.L.C.
P.O. Box 46
Mobile, Alabama 36601-0046
Phone: (251) 432-1414
Fax:   (251) 433-4106
E-mail: michelnicrosi@mhsolaw.com

**CERTIFICATE OF SERVICE**

  I certify that on February 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

              s/Michel Nicrosi
              Michel Nicrosi
              Miller, Hamilton, Snider & Odom, L.L.C.
              P.O. Box 46
              Mobile, Alabama 36601-0046
              Phone: (251) 432-1414
              Fax: (251) 433-4106
              E-mail: michelnicrosi@mhsolaw.com