**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | **Criminal No. 05-00119-MEF** |
| | * | |
| PAUL MICHAEL HAMRICK | * | |

## MOTION FOR BILL OF PARTICULARS

Paul Hamrick was an honest public servant.  He served the people of Alabama with energy and integrity.

This second superseding indictment makes – in broad, vague, conclusory terms – the very serious charge that he sold his office and conspired to run the State of Alabama, not for its people, but as a criminal racket.  The law compels the prosecution to be much more specific, and to say exactly what Mr. Hamrick is supposed to have done wrong.  Mr. Hamrick therefore respectfully requests that the Court order the prosecution to file a bill of particulars, under Fed. R. Crim. P. 7(f)[1].

It is particularly important to bear in mind that this case is about politics.  To paraphrase Justice White's majority opinion in *McCormick v. United States*, 500 U.S. 257, 272 (1991):

---

[1]    A bill of particulars should be granted whenever indictment's failure to provide factual or legal information significantly impairs defendant's ability to prepare his defense or is likely to lead to prejudicial surprise.  *United States v. Giampa*, D.N.J. 1995, 904 F.Supp. 235.  Bill of particulars may require government to disclose to defendant charged with conspiracy: names of all persons government will claim to have been coconspirators to extent such persons are known to government; location of acts performed by principals which are set forth in count; and place where principal offense charged allegedly occurred.  *United States v. White*, D. Conn. 1990, 753 F. Supp.432.  Grand jury's association-in-fact allegation on RICO count was overly vague; therefore, defendant was entitled to a bill of particulars describing how defendants charged with conspiracy functioned as an "enterprise" under the Act.  *United States v. Bailey*, N.D. Ill.1987, 689 F.Supp. 1463.

Serving constituents and supporting legislation that will benefit the [constituency] and individuals and groups is the everyday business of [public servants]. It is also true that campaigns must be run and financed. Money is constantly being solicited on behalf of candidates, who run on platforms and who claim support on the basis of their views and what they intend to do or have done. . . . [T]o hold that [public servants] commit [a federal crime] when they act for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment of [Congress's intent]. To hold [that these acts are criminal] would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the Nation.

The courts therefore impose exacting standards on the prosecution to allege and prove that a public servant's conduct crossed the line – that it involved, not the ordinary business of American politics, but an explicit, specific sale of the public servant's office in exchange for specific official acts.[2]  Mr. Hamrick did not sell his office. And unless the prosecution can provide the specificity the law requires, he ought not have to endure a criminal trial.

### Requests as to Count One of the Second Superseding Indictment

1. Describe how the departments, agencies, and authorities listed in ¶ 1(b)[3] constituted "an 'enterprise,' as defined by Title 18, United States Code, Section 1961(4)," as alleged in ¶ 3.

---

[2]        *See, e.g., McCormick v. United States*, 500 U.S. 257, 273 (1991) (Hobbs Act violated "only if the payments are made in return for an explicit promise or undertaking to perform or not to perform an official act"); *See generally, United States v. Sawyer*, 85 F.3d 713 (1st Cir. 1996); *United States v. Brumley*, 116 F.3d 729 (5th Cir. 1997) (The mere assertion that a defendant's conduct violated some generalized duty of "good," "honest," or "conflict-free" government will be insufficient, on its own, to sustain an honest services conviction).

[3]        All references to paragraph numbers throughout this motion are to the second superseding indictment.

2.   State the basis on which you contend that each of the departments, agencies, and authorities listed by name in ¶ 1(b) is a part of the Executive Department of the State of Alabama, as that term is defined in Art. V, § 112 of the Constitution of the State of Alabama.

3.   Identify the "other Alabama departments, agencies, and authorities," not listed by name in ¶ 1(b), that you contend comprised the enterprise.

4.   State the basis on which you contend that the each of the "other Alabama departments, agencies, and authorities," not listed by name in ¶ 1(b), is a part of the Executive Department of the State of Alabama, as that term is defined in Art. V, § 112 of the Constitution of the State of Alabama.

5.   Describe the manner in which the named and unnamed departments, agencies, and authorities "functioned as a continuing unit," as alleged in ¶ 3.

6.   State the "common purpose" of the enterprise referenced in ¶ 3

7.   State the "objectives of the enterprise" referenced in ¶ 3.

8.    Identify the "other persons known . . . to the Grand Jury, being persons employed by and associated with the enterprise," referenced in ¶ 4.

9.    State the date, time, and place, "in or about August 1997," on which you contend Mr. Hamrick first "knowingly and intentionally conspired to violate 18 U.S.C. § 1962©)," as alleged in ¶ 4.

10.    Identify the persons, other than Mr. Hamrick, whom you contend were present, "in or about August 1997," when Mr. Hamrick first "knowingly and intentionally conspired to violate 18 U.S.C. § 1962©)," as alleged in ¶ 4.

11.   State your contention as to the manner in which – *e.g.,* verbally, in writing, by

conduct – "in or about August 1997," Mr. Hamrick first "knowingly and intentionally conspired to violate 18 U.S.C. § 1962©)," as alleged in ¶ 4.

12.  If you contend that Mr. Hamrick, by conduct, first "knowingly and intentionally conspired to violate 18 U.S.C. § 1962©)," in or about August 1997, as alleged in ¶ 4, describe the conduct in detail.

13.  For each instance, after the first instance, on which you contend Mr. Hamrick "knowingly and intentionally conspired to violate 18 U.S.C. § 1962©)," provide the information requested in Nos. 9-12 above.

14.  State the date, time, place, and manner in which you contend Mr. Hamrick "agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise," as alleged in ¶ 4.

15.  Identify the other persons you contend were present when Mr. Hamrick "agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise," as alleged in ¶ 4.

16.  Identify the "other state officials and employees," referenced but not named in ¶ 6, of whose honest services you contend Mr. Hamrick schemed to deprive the State of Alabama.

17.  Paragraph 7 alleges that Mr. Hamrick "engaged in bribery and extortion under color of official right."  No other paragraph, anywhere in the indictment, makes such an allegation about Mr. Hamrick, as opposed to other defendants.  Therefore, state each date, time, place, and manner in which you contend Mr. Hamrick engaged in these acts, and identify the other persons you contend were present when you contend he did so.

18.  Identify the unnamed "co-conspirators known . . . to the Grand Jury" referenced in ¶

7.

19.   Identify the unnamed "co-conspirators known . . . to the Grand Jury" referenced in ¶ 8.

20.  Identify the unnamed "co-conspirators known . . . to the Grand Jury" referenced in ¶ 9.

21.  Identify the unnamed "co-conspirators known . . . to the Grand Jury" referenced in ¶ 10.

22.  Identify each "official action" that you contend Mr. Hamrick "knowingly g[a]ve or withh[e]ld," as alleged in ¶ 10.

23.   For each of Mr. Hamrick's alleged "official action[s]" referenced in ¶ 10, identify the date on which you contend he gave or withheld it.

24.  Identify each "official action" that you contend Mr. Hamrick "threaten[ed] to give or withhold," as alleged in ¶ 10.

25.  For each "threat[]," ¶ 10, you contend Mr. Hamrick made, state the date, time, place, and manner in which you contend he made it, and identify each person you contend was present when he did so.

26.  Identify the "others not entitled to such benefits" referenced in ¶ 10.

**Requests as to Count Two of the Second Superseding Indictment**

27.  State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 1(a), ¶ 15.

28.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 1(a), ¶ 15, state the substance of the knowledge that

you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

29.   State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 1(b), ¶ 16.

30.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 1(b), ¶ 16, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

31.   State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as "Racketeering Acts 1(c)-(e)", ¶¶ 17-20.

32.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as "Racketeering Acts 1(c)-(e)," ¶¶ 17-20, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

33.   State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as "Racketeering Act 1(e)", ¶¶ 21-22.

34.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as "Racketeering Act 1(e)," ¶¶ 21-22, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

35.   State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 1(f), ¶ 23.

36.  If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 1(f), ¶ 23, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

37.  State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 1(g), ¶ 24.

38.  If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 1(g), ¶ 24, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

39.  With respect to Racketeering Acts 1(a)-(g):

(a) Identify any *quid pro quo* for the payment by Mr. Scrushy alleged in these acts;

(b) Describe when, where, and how you contend any such *quid pro quo* was agreed upon, who was present, and what terms you contend to have been part of any such *quid pro quo*.

40.  State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 2(a), ¶ 26.

41.  If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 2(a), ¶ 26, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

42.  State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 2(b), ¶ 27.

7

43.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 2(b), ¶ 27, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

44.   With respect to Racketeering Acts 2(a)-(b):

(a) Identify any *quid pro quo* for the payment by Mr. Young alleged in these acts;

(b) Describe when, where, and how you contend any such *quid pro quo* was agreed upon, who was present, and what terms you contend to have been part of any such *quid pro quo;*

©) Identify the "others known . . . to the Grand Jury" referenced in paragraph 26.

45.  With respect to Racketeering Acts 2(c)-(o), state the date "in or about August 1997" that Governor Siegelman and Mr. Hamrick first "knowingly and willfully devised and intended to devise" the alleged "scheme and artifice to defraud the State of Alabama of its right to the honest and faithful services of themselves as public officials and employees of the State of Alabama," as alleged in ¶ 28.

46.   Identify the persons, other than Governor Siegelman and Mr. Hamrick, whom you contend were present, "in or about August 1997," when Governor Siegelman and Mr. Hamrick first "knowingly and willfully devised and intended to devise" the alleged "scheme and artifice to defraud the State of Alabama of its right to the honest and faithful services of themselves as public officials and employees of the State of Alabama," as alleged in ¶ 28.

47.   State your contention as to the manner in which – *e.g.,* verbally, in writing, by conduct – "in or about August 1997," Governor Siegelman and Mr. Hamrick first "knowingly and willfully devised and intended to devise" the alleged "scheme and artifice to defraud the

State of Alabama of its right to the honest and faithful services of themselves as public officials and employees of the State of Alabama," as alleged in ¶ 28.

48.   If you contend that Governor Siegelman and Mr. Hamrick, by conduct, first "knowingly and willfully devised and intended to devise" the alleged "scheme and artifice to defraud the State of Alabama of its right to the honest and faithful services of themselves as public officials and employees of the State of Alabama," as alleged in ¶ 28, describe the conduct in detail.

49.   For each instance, after the first instance, in which you contend Governor Siegelman and Mr. Hamrick "knowingly and willfully devised and intended to devise" the alleged "scheme and artifice to defraud the State of Alabama of its right to the honest and faithful services of themselves as public officials and employees of the State of Alabama," as alleged in ¶ 28, provide the information requested in Nos. 46-48 above.

50.   Describe the manner in which Mr. Young aided and abetted Governor Siegelman and Mr. Hamrick to "knowingly and willfully devise[] and intend[] to devise" the alleged "scheme and artifice to defraud the State of Alabama of its right to the honest and faithful services of themselves as public officials and employees of the State of Alabama," as alleged in ¶ 28.

51.   Describe the manner in which Mr. Bailey aided and abetted Governor Siegelman and Mr. Hamrick to "knowingly and willfully devise[] and intend[] to devise" the alleged "scheme and artifice to defraud the State of Alabama of its right to the honest and faithful services of themselves as public officials and employees of the State of Alabama," as alleged in ¶ 28.

52.   State each date on which Mr. Young aided and abetted Governor Siegelman and Mr. Hamrick to "knowingly and willfully devise[] and intend[] to devise" the alleged "scheme and

artifice to defraud the State of Alabama of its right to the honest and faithful services of themselves as public officials and employees of the State of Alabama," as alleged in ¶ 28.

53.  State each date on which Mr. Bailey aided and abetted Governor Siegelman and Mr. Hamrick to "knowingly and willfully devise[] and intend[] to devise" the alleged "scheme and artifice to defraud the State of Alabama of its right to the honest and faithful services of themselves as public officials and employees of the State of Alabama," as alleged in ¶ 28.

54.  Identify, by citation to the applicable bill, statute, rule, or regulation, the "alcoholic beverage and waste disposal regulation" referenced in ¶ 28.

55.  Identify, by citation to the applicable bill, statute, rule, or regulation, the "hazardous waste fees and taxes" referenced in ¶ 28.

56.  Identify the entity whose duty it was to "assess[] and collect[]" the "hazardous waste fees and taxes" referenced in ¶ 28.

57.  Identify the municipality involved in the "municipal bond funding" referenced in ¶ 28.

58.  With respect to the "state construction contracting" referenced in ¶ 28, identify the project, the individual or entity tasked with letting the contract, and state the date on which the contract, if any, was let.

59.  Identify each and every item of "money, property, and other things of value" that you contend, in ¶ 29, that Mr. Hamrick received, and state the date on which he received it.

60.  For each receipt of an item identified in response to No. 59, state the place at which you contend Mr. Hamrick received it, and identify any persons other than Mr. Hamrick who were present when you contend he received it.

61. State each and every date on which you contend Mr. Hamrick exerted "official power, actions, and influence concerning the business and financial interests of Clayton 'Lanny' Young," as alleged in ¶ 29.

62. Identify and describe any and all "official power" that you contend, in ¶ 29, Mr. Hamrick exerted, and identify each and every person or entity on whom you contend he exerted it.

63. Identify and describe any and all "actions" that you contend, in ¶ 29, Mr. Hamrick took, and identify each and every person or entity involved in those actions.

64. Identify and describe any and all "influence" that you contend, in ¶ 29, Mr. Hamrick exerted, and identify each and every person or entity on whom you contend he exerted it.

65. For each and every instance on which you contend, in ¶ 30(b), Mr. Young "g[a]ve" Mr. Hamrick "valuable private airplane transportation," state:

(a) the departure and arrival airports and fixed base operations;

(b) the name(s), address(es), and telephone number(s) of the pilot(s);

(c) the name(s), address(es), and telephone number(s) of the employer of the pilot(s);

(d) the name(s), address(es), and telephone number(s) of the owner of the aircraft;

(e) the date and time of each flight;

(f) the age, make, and model of each aircraft;

(g) the cost, to Mr. Young, of each flight;

(h) whether you contend that Mr. Hamrick paid for all or any portion of any such flight he took, and, if so, identify the flight;

(i) whether you contend that any person or entity, other than Mr. Hamrick or Mr. Young, paid for all or any portion of any such flight Mr. Hamrick took, and, if so, identify the flight and the person or entity, other than Mr. Hamrick or Mr. Young, who made the

11

payment;

(j) the purpose of any such flight you contend that Mr. Hamrick took.

66.  Identify, by form (cash, check, etc.) and dollar amount, the portion of the "approximately $46,000" referenced in ¶ 30(f) that you contend Mr. Young gave to Mr. Hamrick "directly."

67.  Identify, by form (cash, check, etc.) and dollar amount, the portion of the "approximately $46,000" referenced in ¶ 30(f) that you contend Mr. Young gave to Mr. Hamrick "indirectly."

68.  For the portion of the "approximately $46,000" referenced in ¶ 30(f) that you contend Mr. Young gave to Mr. Hamrick "indirectly," state what you mean by "indirectly" – *e.g.,* through an intermediary.

69.  State each date on which you contend Mr. Young gave Mr. Hamrick all or any portion of the "approximately $46,000" referenced in ¶ 30(f), and state, for each such date, whether you contend Mr. Hamrick was a public official.

70.  Identify by name(s), address(es), and telephone number(s) each and every person present on each date on which you contend Mr. Young gave Mr. Hamrick all or any portion of the "approximately $46,000" referenced in ¶ 30(f).

71.  Identify, by street address, city, and state each and every location at which you contend Mr. Young gave Mr. Hamrick all or any portion of the "approximately $46,000" referenced in ¶ 30(f).

72.  For each location listed in response to No. 71 that is owned and/or leased by an entity, state the name, address, and telephone number of the entity.

12

73.  State each and every date on which you contend, in ¶ 30(g), Mr. Hamrick

"assist[ed]" Mr. Young "through [his] official power, actions, and influence."

74.  State whether you contend that Mr. Hamrick exerted any or all of the "influence"

that you allege, in ¶ 30(g), was exerted "between August 1997 and September 1997" with respect

to the "passage of legislation allowing sale of alcoholic beverages on each day of the week,

including Sunday, at a motor speedway."

75.  If your answer to No. 74 is "yes," state each date, time, place, and manner in which

Mr. Hamrick exerted the influence, and identify by name(s), address(es), and telephone

number(s) each and every person or entity upon whom he exerted it.

76.  Identify, by citation to a statute, bill number, rule, or regulation, the "legislation"

referenced in ¶ 30(g), and state the name(s) of its sponsor.

77.  With respect to the "legislation" referenced in ¶ 30(g), identify by name, address,

and telephone number any and all legislators upon whom you contend Mr. Hamrick exerted

"influence," and how each such legislator voted on the "legislation."

78.  Identify the "motor speedway" referenced in ¶ 30(g).

78.  State whether you contend that Mr. Hamrick exerted any or all of the "influence"

that you allege, in ¶ 30(g), was exerted "between 11/3/98 and 1/31/99" upon "the Cherokee

County Commission."

79.  If your answer to No. 78 is "yes," state each date, time, place, and manner in which

Mr. Hamrick exerted the influence, and identify by name(s), address(es), and telephone

number(s) each and every person or entity upon whom he exerted it.

80.  Identify the "favor" with respect to "Mr. Young's business interests" referenced in

the portion of ¶ 30(g) relating to the Cherokee County Commission.

81.  Identify the "business interests" of Mr. Young referenced in the portion of ¶ 30(g) relating to the Cherokee County Commission.

82.  State whether you contend that Mr. Hamrick exerted any or all of the "influence" that you allege, in ¶ 30(g), was exerted "between July 1998 and 7/15/99" upon the "waste disposal business represented by" Mr. Young.

83.  If your answer to No. 82 is "yes," state each date, time, place, and manner in which Mr. Hamrick exerted the influence, and identify by name(s), address(es), and telephone number(s) each and every person or entity upon whom he exerted it.

84.  State the name of the "waste disposal business represented by" Mr. Young referenced in ¶ 30(g).

85.  State whether you contend the "waste disposal business" in fact "continue[d] paying" Mr. Young, and the reason(s) that you contend that it did so.

86.  Identify the person or entity responsible for the "regulation of waste disposal fees and taxes at a facility near Emelle, AL" referenced in ¶ 30(g).

87.  State the manner in which you contend the "regulation of waste disposal fees and taxes at a facility near Emelle, AL" referenced in ¶ 30(g) was "influenc[ed]."

88.  Identify by name, address, and telephone number the owner(s) of the "facility near Emelle, AL" referenced in ¶ 30(g), and state the name of the facility.

89.   Identify by citation to statute, bill, rule, or regulation, the authority for the imposition of the "waste disposal fees and taxes" referenced in ¶ 30(g).

90.  State whether you contend that Mr. Hamrick exerted any or all of the "influence"

that you allege, in ¶ 30(g), was exerted "between 7/1/00 and 11/2/00" upon the "*de facto*

Director of the Alabama Development Office."

91.   If your answer to No. 90 is "yes," state each date, time, place, and manner in which

Mr. Hamrick exerted the influence, and identify by name(s), address(es), and telephone

number(s) each and every person or entity upon whom he exerted it.

92.   Identify by name, address, and telephone number the "*de facto* Director of the

Alabama Development Office" referenced in ¶ 30(g) .

93.   State whether you contend the "*de facto* Director of the Alabama Development

Office" also was the de jure Director of the Alabama Development Office at the time the

"influence" you reference in ¶ 30(g) was exerted.

94.   If your answer to No. 93 is "no," state your contention as to the difference between

the position of "*de facto* Director of the Alabama Development Office" and the position of de

jure Director of the Alabama Development Office.

95.   If your answer to No. 93 is "no," describe the role that you contend the "*de facto*

Director of the Alabama Development Office" had with respect to the business and affairs of the

Alabama Development Office.

96.   You contend, in ¶ 30(g), that the "*de facto* Director of the Alabama Development

Office" was "influenc[ed]" to "advance a business represented" by Mr. Young "on the list of

companies eligible for industrial tax-free municipal bond issues."  Define the term "advance" as

you use it in that paragraph.

97.   You contend, in ¶ 30(g), that the "*de facto* Director of the Alabama Development

Office" was "influenc[ed]" to "advance a business represented" by Mr. Young "on the list of

companies eligible for industrial tax-free municipal bond issues." Identify by name, address, and telephone number each person or entity responsible for maintaining that "list of companies."

98.  You contend, in ¶ 30(g), that the "*de facto* Director of the Alabama Development Office" was "influenc[ed]" to "advance a business represented" by Mr. Young "on the list of companies eligible for industrial tax-free municipal bond issues." Define the term "eligible" as you use it in that paragraph.

99.  You contend, in ¶ 30(g), that the "*de facto* Director of the Alabama Development Office" was "influenc[ed]" to "advance a business represented" by Mr. Young "on the list of companies eligible for industrial tax-free municipal bond issues." Identify each and every issuer of the "industrial tax-free municipal bond issues" you reference in that paragraph.

100.  For each such "industrial tax-free municipal bond issue," identify by name, address, and telephone number the issuer, the underwriter, bond counsel, and underwriter's counsel.

101.  Identify each and every company, other than the "business represented by" Mr. Young, that you contend, in ¶ 30(g), was on the "list of companies" referenced in that paragraph.

102.  State whether you contend the "*de facto* Director of the Alabama Development Office" in fact "advance[d]" the "business represented by" Mr. Young on the "list of companies" referenced in  ¶ 30(g).

103.  If your answer to No. 102 is "yes," state the time, place, date, and manner in which you contend the "*de facto* Director of the Alabama Development Office" did so.

104.   State whether you contend that Mr. Hamrick exerted any or all of the "influence" that you allege, in ¶ 30(g), was exerted "between September 2000 and May 2001" with respect to "the award of a construction management contract."

16

105. If your answer to No. 104 is "yes," state each date, time, place, and manner in which Mr. Hamrick exerted the influence, and identify by name(s), address(es), and telephone number(s) each and every person or entity upon whom he exerted it.

106. Identify by name, address, and telephone number the "company controlled by" Mr. Young that you contend, in ¶ 30(g), was "award[ed]" the "construction management contract."

107. Identify by name, address, and telephone number each and every owner of the "company controlled by" Mr. Young that you contend, in ¶ 30(g), was "award[ed]" the "construction management contract."

108. Identify the manner in which (*e.g.*, voting, persuasion) and the means by which (*e.g.*, ownership of a controlling share of the outstanding stock) you contend Mr. Young "controlled" the company that you contend, in ¶ 30(g), was "award[ed]" the "construction management contract."

109. State the date on which you contend, in ¶ 30(g), the "company controlled by" Mr. Young was "award[ed]" the "construction management contract."

110. State the street address, city, and state of the "warehouses" referenced in ¶ 30(g).

111. State the manner in which you contend, in ¶ 30(g), the Alabama Department of Economic and Community Affairs was "influenc[ed]" with respect to "the award of" the "construction management contract to [the] company controlled by" Mr. Young.

112. State the manner in which you contend, in ¶ 30(g), the Alabama Alcoholic Beverages Control Board was "influenc[ed]" with respect to "the award of" the "construction management contract to [the] company controlled by" Mr. Young.

113. State the date(s) on which you contend, in ¶ 30(g), the Alabama Department of

17

Economic and Community Affairs was "influenc[ed]" with respect to "the award of" the "construction management contract to [the] company controlled by" Mr. Young.

114.  State the date(s) on which you contend, in ¶ 30(g), the Alabama Alcoholic Beverages Control Board was "influenc[ed]" with respect to "the award of" the "construction management contract to [the] company controlled by" Mr. Young.

115.  State each person other than Mr. Hamrick whom you contend exerted any of the "influence" referenced in any portion of ¶ 30(g), and state the date, time, place, and manner each such person exercised such influence, and identify by name, address, and telephone number each and every person or entity upon whom such influence was exerted.

116.  State whether you contend Mr. Hamrick had knowledge that Governor Siegelman "would and did," as you contend in ¶ 30(h), "solicit and obtain money and property from businesses that benefitted from official action" that you contend Governor Siegelman and Mr. Hamrick took "for Clayton 'Lanny' Young."

117.  If your answer to No. 116 is "yes," state the date, time, place, and manner in which Mr. Hamrick gained that knowledge, and identify by name, address, and telephone number each and every person who was present when Mr. Hamrick gained that knowledge.

118.  Identify by name, address, and telephone number each and every one of the "businesses" referenced in ¶ 30(h).

119.  Identify by name, address, and telephone number of each and every owner of any interest in any of the "businesses" referenced in ¶ 30(h).

120.  Identify the "official action" referenced in ¶ 30(h).

121.  Identify the manner in which the "businesses"  referenced in ¶ 30(h) benefitted

from the "official action" referenced in ¶ 30(h).

122.  State each date on which you contend, in ¶ 30(h), that Governor Siegelman "solicit[ed] . . . money and property" from the "businesses" referenced in ¶ 30(h).

123.  For each "solicit[ation]" referenced in ¶ 30(h), state whether the solicitation was successful.

124.  State each date on which you contend, in ¶ 30(h), that Governor Siegelman "obtain[ed] money and property" from the "businesses" referenced in ¶ 30(h).

125.  Describe any role that you contend Mr. Hamrick had in "plac[ing] and caus[ing] to be placed" the mailings and deliveries alleged in ¶ 31.

126.  State the manner in which you contend the mailings and deliveries alleged in ¶ 31 furthered the "scheme and artifice to defraud" referenced in ¶ 29.

127.   With respect to Racketeering Acts 2(h)-(o), describe any role that you contend Mr. Hamrick had in transmitting the wire communications alleged in ¶ 33.

128.  State the manner in which you contend the wire communications alleged in ¶ 33 furthered the "scheme and artifice to defraud" referenced in ¶ 29.

129.  With respect to Racketeering Act 3, identify by check number, and by the institution and bank account (by number) on which it was drawn, the "check in the amount of $3,000" that you contend, in ¶ 34, that Mr. Hamrick "g[a]ve" to Mr. Young on October 9, 2001.

130.  State the form (cash, check, etc.) of the "$6,000" that you contend, in ¶ 34, Mr. Young "g[a]ve" Mr. Hamrick on September 25, 2000, and, if the form was a check or checks, provide the information requested in No. 129.

131.  State the manner in which you contend, in ¶ 34, that Mr. Hamrick "corruptly

persuad[ed]" Mr. Young and state the result of that alleged persuasion, including how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 34 actually was hindered, delayed, or prevented.

132.  State how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 34 would have been different, but for the alleged "corrupt[] persua[sion]" you contend Mr. Hamrick engaged in.

133.  State the manner in which you contend, in ¶ 34, that Mr. Hamrick "engage[d] in misleading conduct" toward Mr. Young and state the result of that alleged misleading conduct, including how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 34 actually was hindered, delayed, or prevented.

134.  State how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 34 would have been different, but for the alleged "misleading conduct" you contend Mr. Hamrick engaged in.

135.  State how you contend, in ¶ 34,  Mr. Hamrick "attempt[ed] to knowingly corruptly persuade" Mr. Young; whether you contend the alleged attempt was successful; and, if you contend the alleged attempt was successful, state how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 34 actually was hindered, delayed, or prevented.

136.  Identify the "federal offenses related to $6,000" referenced in ¶ 34.

137.  Identify the agents of the Federal Bureau of Investigation to whom you contend Mr. Young's "communication" referenced in ¶ 34 actually was hindered, delayed, or prevented, or to whom you contend Mr. Hamrick attempted to hinder, delay, or prevent Mr. Young from

communicating.

138.  State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 4(a), ¶ 36.

139.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 4(a), ¶ 36, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

140.  With respect to Racketeering Act 4(a), identify by check number, and by the institution and bank account (by number) on which it was drawn, the "check in the amount of $10,503.39" that you contend, in ¶ 36, that Governor Siegelman "caused" Mr. Bailey to write to Mr. Young on June 5, 2001.

141.  State the form (cash, check, etc.) of the "$9,200" that you contend, in ¶ 36, Mr. Young "g[a]ve" Governor Siegelman on January 20, 2000, and, if the form was a check or checks, provide the information requested in No. 140.

142.  State the manner in which you contend, in ¶ 36, that Governor Siegelman "corruptly persuad[ed]" Mr. Young and state the result of that alleged persuasion, including how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 36 actually was hindered, delayed, or prevented.

143.  State the manner in which you contend, in ¶ 36, that Governor Siegelman "corruptly persuad[ed]" Mr. Bailey and state the result of that alleged persuasion, including how you contend Mr. Bailey's "communication to the Federal Bureau of Investigation" referenced in ¶ 36 actually was hindered, delayed, or prevented.

21

144.  State how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 36 would have been different, but for the alleged "corrupt[] persua[sion]" you contend Governor Siegelman engaged in.

145.  State how you contend Mr. Bailey's "communication to the Federal Bureau of Investigation" referenced in ¶ 36 would have been different, but for the alleged "corrupt[] persua[sion]" you contend Governor Siegelman engaged in.

146.  State the manner in which you contend, in ¶ 36, that Governor Siegelman "engage[d] in misleading conduct" toward Mr. Young and state the result of that alleged misleading conduct, including how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 36 actually was hindered, delayed, or prevented.

147.  State the manner in which you contend, in ¶ 36, that Governor Siegelman "engage[d] in misleading conduct" toward Mr. Bailey and state the result of that alleged misleading conduct, including how you contend Mr. Bailey's "communication to the Federal Bureau of Investigation" referenced in ¶ 36 actually was hindered, delayed, or prevented.

148.  State how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 36 would have been different, but for the alleged "misleading conduct" you contend Governor Siegelman engaged in.

149.  State how you contend Mr. Bailey's "communication to the Federal Bureau of Investigation" referenced in ¶ 36 would have been different, but for the alleged "misleading conduct" you contend Governor Siegelman engaged in.

150.  State how you contend, in ¶ 36, Governor Siegelman "attempt[ed] to knowingly corruptly persuade" Mr. Young; whether you contend the alleged attempt was successful; and, if

you contend the alleged attempt was successful, state how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 36 actually was hindered, delayed, or prevented.

151.   State how you contend, in ¶ 36, Governor Siegelman "attempt[ed] to knowingly corruptly persuade" Mr. Bailey; whether you contend the alleged attempt was successful; and, if you contend the alleged attempt was successful, state how you contend Mr. Bailey's "communication to the Federal Bureau of Investigation" referenced in ¶ 36 actually was hindered, delayed, or prevented.

152.   Identify the "federal offenses related to $9,200" referenced in ¶ 36.

153.   Identify the agents of the Federal Bureau of Investigation to whom you contend Mr. Young's "communication" referenced in ¶ 36 actually was hindered, delayed, or prevented, or to whom you contend Governor Siegelman attempted to hinder, delay, or prevent Mr. Young from communicating.

154.   Identify the agents of the Federal Bureau of Investigation to whom you contend Mr. Bailey's "communication" referenced in ¶ 36 actually was hindered, delayed, or prevented, or to whom you contend Governor Siegelman attempted to hinder, delay, or prevent Mr. Bailey from communicating.

155.   Identify by name, address, and telephone number the "others known . . . to the Grand Jury" referenced in ¶ 36.

156.   Identify the means by which Governor Siegelman "cause[d]" Mr. Bailey to write the check referenced in ¶ 36.

157.   State whether you contend that Mr. Hamrick had knowledge of the conduct you

attribute to Governor Siegelman as Racketeering Act 4(b), ¶ 37.

158.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 4(b), ¶ 37, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

159.   With respect to Racketeering Act 4(b), identify by check number, and by the institution and bank account (by number) on which it was drawn, the "check in the amount of $2,973.35" that you contend, in ¶ 37, that Governor Siegelman "caused" Mr. Bailey to "provide him" on October 16, 2001.

160.  State whether you contend that the word "him" in ¶ 37 refers to Governor Siegelman, to Mr. Young, or to another person – and if to another person, identify that person by name, address, and telephone number.

161.  State the name, address, and telephone number of the "counsel for Nicholas D. Bailey" referenced in ¶ 37.

162.  State the form (cash, check, etc.) of the "$9,200" that you contend, in ¶ 37, Mr. Young "g[a]ve" Governor Siegelman on January 20, 2000, and, if the form was a check or checks, provide the information requested in No. 158.

163.  State the manner in which you contend, in ¶ 37, that Governor Siegelman "corruptly persuad[ed]" Mr. Young and state the result of that alleged persuasion, including how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 actually was hindered, delayed, or prevented.

164.  State the manner in which you contend, in ¶ 37, that Governor Siegelman

"corruptly persuad[ed]" Mr. Bailey and state the result of that alleged persuasion, including how you contend Mr. Bailey's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 actually was hindered, delayed, or prevented.

165.  State the manner in which you contend, in ¶ 37, that Governor Siegelman "corruptly persuad[ed]" "counsel for Nicholas D. Bailey" and state the result of that alleged persuasion, including how you contend such counsel's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 actually was hindered, delayed, or prevented.

166.  State how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 would have been different, but for the alleged "corrupt[] persua[sion]" you contend Governor Siegelman engaged in.

167.  State how you contend Mr. Bailey's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 would have been different, but for the alleged "corrupt[] persua[sion]" you contend Governor Siegelman engaged in.

168.  State how you contend "counsel for Nicholas D. Bailey"'s "communication to the Federal Bureau of Investigation" referenced in ¶ 37 would have been different, but for the alleged "corrupt[] persua[sion]" you contend Governor Siegelman engaged in.

169.  State the manner in which you contend, in ¶ 37, that Governor Siegelman "engage[d] in misleading conduct" toward Mr. Young and state the result of that alleged misleading conduct, including how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 actually was hindered, delayed, or prevented.

170.  State the manner in which you contend, in ¶ 37, that Governor Siegelman "engage[d] in misleading conduct" toward Mr. Bailey and state the result of that alleged

misleading conduct, including how you contend Mr. Bailey's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 actually was hindered, delayed, or prevented.

171.  State the manner in which you contend, in ¶ 37, that Governor Siegelman "engage[d] in misleading conduct" toward "counsel for Nicholas D. Bailey" and state the result of that alleged misleading conduct, including how you contend such counsel's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 actually was hindered, delayed, or prevented.

172.  State how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 would have been different, but for the alleged "misleading conduct" you contend Governor Siegelman engaged in.

173.  State how you contend Mr. Bailey's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 would have been different, but for the alleged "misleading conduct" you contend Governor Siegelman engaged in.

174.  State how you contend "counsel for Nicholas D. Bailey"'s "communication to the Federal Bureau of Investigation" referenced in ¶ 37 would have been different, but for the alleged "misleading conduct" you contend Governor Siegelman engaged in.

175.  State how you contend, in ¶ 37,  Governor Siegelman "attempt[ed] to knowingly corruptly persuade" Mr. Young; whether you contend the alleged attempt was successful; and, if you contend the alleged attempt was successful, state how you contend Mr. Young's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 actually was hindered, delayed, or prevented.

176.  State how you contend, in ¶ 37,  Governor Siegelman "attempt[ed] to knowingly

corruptly persuade" Mr. Bailey; whether you contend the alleged attempt was successful; and, if you contend the alleged attempt was successful, state how you contend Mr. Bailey's "communication to the Federal Bureau of Investigation" referenced in ¶ 37 actually was hindered, delayed, or prevented.

177.  Identify the "federal offenses related to $9,200" referenced in ¶ 37.

178.  Identify the agents of the Federal Bureau of Investigation to whom you contend Mr. Young's "communication" referenced in ¶ 37 actually was hindered, delayed, or prevented, or to whom you contend Governor Siegelman attempted to hinder, delay, or prevent Mr. Young from communicating.

179.  Identify the agents of the Federal Bureau of Investigation to whom you contend Mr. Bailey's "communication" referenced in ¶ 37 actually was hindered, delayed, or prevented, or to whom you contend Governor Siegelman attempted to hinder, delay, or prevent Mr. Bailey from communicating.

180.  Identify the agents of the Federal Bureau of Investigation to whom you contend "counsel for Nicholas D. Bailey"'s "communication" referenced in ¶ 37 actually was hindered, delayed, or prevented, or to whom you contend Governor Siegelman attempted to hinder, delay, or prevent such counsel from communicating.

181.  Identify by name, address, and telephone number the "others known . . . to the Grand Jury" referenced in ¶ 37.

182.  Identify the means by which Governor Siegelman "cause[d]" Mr. Bailey to write the check referenced in ¶ 37.

183.  State whether you contend that Mr. Hamrick had knowledge of the conduct you

27

attribute to Governor Siegelman as Racketeering Act 5(a), ¶ 39.

184.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 5(a), ¶ 39, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

185.   State the date, time, place, and manner in which you contend, in ¶ 39, Governor Siegelman "demanded $100,000.00 . . . from Jimmy Lynn Allen," and identify by name, address, and telephone number each person you contend was present when he did so.

186.   State the date, time, place, and manner in which you contend, in ¶ 39, Governor Siegelman "obtained $40,000.00 . . . from Jimmy Lynn Allen," and identify by name, address, and telephone number each person you contend was present when he did so.

187.   Identify the "official action and influence" that you contend, in ¶ 39, that Governor Siegelman "threat[ened] to use . . . to cause economic harm to Jimmy Lynn Allen's business interests."

188.   Identify the "official action and influence" that you contend, in ¶ 39, that Governor Siegelman "promise[d] to use . . . to facilitate Jimmy Lynn Allen's business interests."

189.   State whether you contend Governor Siegelman actually "use[d]" the "official action and influence" you reference in ¶ 39 to "cause economic harm to" or "to facilitate" Mr. Allen's "business interests."

190.   If the answer to No. 188 is "yes," state the time, place, date, and manner in which you contend Governor Siegelman did so.

191.   If the answer to No. 188 is "yes," identify by name, address, and telephone number

each and every person whom you contend was present when Governor Siegelman "use[d]" the "official action and influence" you reference in ¶ 39.

192.  Describe Mr. Allen's "business interests involving the Alabama Department of Transportation" referenced in ¶ 39.

193.  State whether you contend Mr. Hamrick was a public servant at the time of the acts you allege in ¶ 39.

194.  State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 5(b), ¶ 40.

195.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 5(b), ¶ 40, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

196.  State the date, time, place, and manner in which you contend, in ¶ 40, Governor Siegelman "solicited $100,000.00 . . . from Jimmy Lynn Allen," and identify by name, address, and telephone number each person you contend was present when he did so.

197.  State the date, time, place, and manner in which you contend, in ¶ 40, Governor Siegelman "accepted, agreed to accept, and received $40,000.00 from Jimmy Lynn Allen," and identify by name, address, and telephone number each person you contend was present when he did so.

198.  If the alleged transaction that you contend constitutes Racketeering Act 5(a) and the alleged transaction that you contend constitutes Racketeering Act 5(b) are in fact the same transaction, state the reason that you fail to contend, in ¶ 40, as you allege in ¶ 39, that Governor

Siegelman "threat[ened] to use official action and influence . . . to cause economic harm to Jimmy Lynn Allen's business interests."

199.  Identify the "official action and influence" that you contend, in ¶ 40, that Governor Siegelman "promise[d] to use . . . to facilitate Jimmy Lynn Allen's business interests."

200.  State whether you contend Governor Siegelman actually "use[d]" the "official action and influence" you reference in ¶ 40 "to facilitate" Mr. Allen's "business interests."

201.  If the answer to No. 199 is "yes," state the time, place, date, and manner in which you contend Governor Siegelman did so.

202.  If the answer to No. 199 is "yes," identify by name, address, and telephone number each and every person whom you contend was present when Governor Siegelman "use[d]" the "official action and influence" you reference in ¶ 40.

203.  Describe Mr. Allen's "business interests involving the Alabama Department of Transportation" referenced in ¶ 40.

204.  State whether you contend Mr. Hamrick was a public servant at the time of the acts you allege in ¶ 40.

205.  State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 5©), ¶ 41.

206.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 5©), ¶ 41, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

207.  State the date, time, place, and manner in which you contend, in ¶ 41, Governor

Siegelman "demanded $250,000.00 . . . from Forrest 'Mac' Marcato," and identify by name, address, and telephone number each person you contend was present when he did so.

208.  Identify the "official action and influence" that you contend, in ¶ 41, that Governor Siegelman "threat[ened] to use . . . to cause economic harm to Forrest 'Mac' Marcato's business interests."

209.  State whether you contend Governor Siegelman actually "use[d]" the "official action and influence" you reference in ¶ 41 to "cause economic harm to" Mr. Marcato's "business interests."

210.  If the answer to No. 208 is "yes," state the time, place, date, and manner in which you contend Governor Siegelman did so.

211.  If the answer to No. 208 is "yes," identify by name, address, and telephone number each and every person whom you contend was present when Governor Siegelman "use[d]" the "official action and influence" you reference in ¶ 41.

212.  Describe Mr. Marcato's "business interests involving the Alabama Department of Transportation" referenced in ¶ 41.

213.  State whether you contend Mr. Hamrick was a public servant at the time of the acts you allege in ¶ 39.

214.   State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 5(d), ¶ 42.

215.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 5(d), ¶ 42, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that

knowledge.

216.  State the date, time, place, and manner in which you contend, in ¶ 42, Governor Siegelman "solicited $250,000.00 . . . from Forrest 'Mac' Marcato," and identify by name, address, and telephone number each person you contend was present when he did so.

217.  Identify the "official action and influence" that you contend, in ¶ 42, that Governor Siegelman "threaten[ed] to use . . . to cause economic harm to Forrest 'Mac' Marcato's business interests."

218.  State whether you contend Governor Siegelman actually "use[d]" the "official action and influence" you reference in ¶ 42 "to cause economic harm to" Mr. Marcato's "business interests."

219.  If the answer to No. 217 is "yes," state the time, place, date, and manner in which you contend Governor Siegelman did so.

220.  If the answer to No. 217 is "yes," identify by name, address, and telephone number each and every person whom you contend was present when Governor Siegelman "use[d]" the "official action and influence" you reference in ¶ 42.

221.  Describe Mr. Marcato's "business interests involving the Alabama Department of Transportation" referenced in ¶ 42.

222.  State whether you contend Mr. Hamrick was a public servant at the time of the acts you allege in ¶ 42.

223.   State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Acts 5(e)-(kk), ¶¶ 43-46.

224.   If you contend that Mr. Hamrick had knowledge of the conduct you attribute to

Governor Siegelman as Racketeering Act 5(e)-(kk), ¶¶ 43-46, state the substance of the knowledge that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

225. State your contention as to the manner in which – *e.g.,* verbally, in writing, by conduct – "on or about October 15, 1998" Governor Siegelman first "knowingly and willfully devised and intended to devise" the alleged "scheme and artifice to defraud the State of Alabama of its right to the honest and faithful services of [Governor Siegelman] as Governor of the State of Alabama and of Gary Mack Roberts as Director of the Alabama Department of Transportation" as alleged in ¶ 43.

226. If you contend that Governor Siegelman, by conduct, first "knowingly and willfully devised and intended to devise" the alleged "scheme and artifice to defraud the State of Alabama of its right to the honest and faithful services of [Governor Siegelman] as Governor of the State of Alabama and of Gary Mack Roberts as Director of the Alabama Department of Transportation" as alleged in ¶ 43, describe the conduct in detail.

227. For each instance, after the first instance, in which you contend Governor Siegelman "knowingly and willfully devised and intended to devise" the alleged "scheme and artifice to defraud the State of Alabama of its right to the honest and faithful services of [Governor Siegelman] as Governor of the State of Alabama and of Gary Mack Roberts as Director of the Alabama Department of Transportation" as alleged in ¶ 43," as alleged in ¶ 43, provide the information requested in Nos. 224-225 above.

228. Describe the manner in which you contend Mr. Roberts aided and abetted Governor Siegelman to "knowingly and willfully devise[] and intend[] to devise" the alleged "scheme and

artifice to defraud the State of Alabama of its right to the honest and faithful services of [Governor Siegelman] as Governor of the State of Alabama and of Gary Mack Roberts as Director of the Alabama Department of Transportation" as alleged in ¶ 43.

229.  Identify the "official position, power, actions, and influence concerning ALDOT" referenced in ¶ 44.

230.  Identify the "money and property to which" you contend Governor Siegelman "was not entitled" in ¶ 44.

231.  State the date[s] on which you contend, in ¶ 44, that Governor Siegelman "exchange[d] official position" etc. for the "money and property" referenced in that paragraph.

232.  State the date[s] on which you contend, in ¶ 45(a), that Mr. Allen made the "investment of approximately $20 million in certain bridges affected by prospective Alabama road construction contracts."

233.  Identify the "certain bridges" referenced in ¶ 45(a).

234.  State the date on which Mr. Allen "select[ed] for appointment by [Governor Siegelman] a Director of ALDOT," as alleged in ¶ 45(b).

235.  State the means by which Mr. Allen communicated to Governor Siegelman Mr. Allen's "select[ion]" for "Director of ALDOT" as alleged in ¶ 45(b).

236.  State whether you contend any other person was with Governor Siegelman at the time Mr. Allen communicated his "select[ion]" for "Director of ALDOT" as alleged in ¶ 45(b), and, if so, identify each and every such person by name, address, and telephone number.

237.  State whether you contend any other person was with Mr. Allen at the time Mr. Allen communicated his "select[ion]" for "Director of ALDOT" as alleged in ¶ 45(b), and, if so,

identify each and every such person by name, address, and telephone number.

238. State the date, time, place, and manner in which Governor Siegelman and Mr. Allen "would and did make Gary Mack Roberts aware of the scheme" as alleged in ¶ 45(e), and state whether you contend any other person was with Governor Siegelman at the time Mr. Allen communicated his "select[ion]" for "Director of ALDOT" as alleged in ¶ 45(b).

239. Define "select," as you use that word in ¶ 45(b).

240. Define "approval," as you use that word in ¶ 45(g).

241. Identify the "official action and official influence" that you contend Mr. Roberts "use[d] . . . to facilitate Jimmy Lynn Allen's business interests," as alleged in ¶ 45(h).

242. State the date, time, place, and manner in which you contend, in ¶ 45(h), Mr. Roberts "use[d]" the "official action and official influence" referenced in ¶ 45(h).

243. Identify the "election polls" that you contend, in ¶ 45(f), that Mr. Roberts monitored.

244. State whether you contend your reference to "the Rainline patent" in ¶ 45(j) refers to all or less than all claims under that patent, and, if your answer is less than all, identify by claim number the specific claims to which your use of the term "the Rainline patent" refers.

245. State what role, if any, you contend Mr. Hamrick played in accomplishing the mailings referenced in ¶ 46.

246. State whether you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Acts 5(ll)-(tt), ¶ 47.

247. If you contend that Mr. Hamrick had knowledge of the conduct you attribute to Governor Siegelman as Racketeering Act 5(ll)-(tt), ¶ 47, state the substance of the knowledge

that you contend Mr. Hamrick had, and state the time, place, and manner in which he gained that knowledge.

248.  State how you contend "the transaction" described in ¶ 47 "was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds."

249.  Identify what you contend in ¶ 47 was the "nature" that you contend was "conceal[ed] and "disguis[ed]."

250.   Identify what you contend in ¶ 47 was the "location" that you contend was "conceal[ed] and "disguis[ed]."

251.   Identify what you contend in ¶ 47 was the "source" that you contend was "conceal[ed] and "disguis[ed]."

252.  Identify what you contend in ¶ 47 was the "ownership" that you contend was "conceal[ed] and "disguis[ed]."

253.  Identify what you contend in ¶ 47 was the "control" that you contend was "conceal[ed] and "disguis[ed]."

254.  Identify the "political action committee" referenced in ¶ 47.

255.  Identify the "violation[s] of 18 U.S.C. §§ 1341, 1343, & 1951," and the "act involving bribery in violation of ALA. CODE § 17-22A-7" referenced in ¶ 47.

256.  State whether you contend Governor Siegelman himself made the deposits you describe in ¶ 47 or whether you contend he caused someone else to do so, and, if the latter, identify the person(s) who made the deposits by name, address, and telephone number.

257.  For each check listed in ¶ 47, identify the "form of unlawful activity" you contend

36

it represented the proceeds of.

### Request as to Counts Ten Through Twelve of the Second Superseding Indictment

258.  State how you contend the mailings and deliveries described in ¶ 63 were "for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud."

### Request as to Counts Thirteen and Fourteen of the Second Superseding Indictment

259.  State how you contend the wires described in ¶ 65 were "for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud."

260.  State why "Paragraph 55" is listed in ¶ 64.

### Request as to Count Fifteen of the Second Superseding Indictment

261.  State whether you contend the offense charged in Count Fifteen differs in any respect from the conduct alleged as Racketeering Act 3 in Count Two, and if so, describe the difference.

Respectfully submitted,


s/T. Jefferson Deen, III
T. Jefferson Deen, III
T. Jefferson Deen, III, P.C.
P.O. Box 2705
Mobile, Alabama 36652
Phone: (251) 433-5860
Fax:    (251) 433-0703
E-mail: TJeffDeen@deenlawpc.com

s/Michel Nicrosi                                      
Michel Nicrosi
Miller, Hamilton, Snider & Odom, L.L.C.
P.O. Box 46
Mobile, Alabama 36601-0046
Phone: (251) 432-1414
Fax:     (251) 433-4106
E-mail: michelnicrosi@mhsolaw.com


## CERTIFICATE OF SERVICE

I certify that on February 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

s/Michel Nicrosi                                      
Michel Nicrosi
Miller, Hamilton, Snider & Odom, L.L.C.
P.O. Box 46
Mobile, Alabama 36601
Phone: (251) 432-1414
Fax:     (251) 433-4106
E-mail: michelnicrosi@mhsolaw.com