IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA * | |
| * | |
| v.   * | Case No. 2:05-cr-119-MEF |
| * | |
| PAUL MICHAEL HAMRICK * | |

**REPLY BRIEF ON THE MOTION TO DISMISS
THE "HONEST SERVICES" CHARGES IN COUNTS
ONE, TWO, AND TEN THROUGH FOURTEEN**

The prosecution concedes that Mr. Hamrick is right. It cannot charge him with depriving the public of his own honest governmental services during the period he was a private citizen. Under established case law, a private person does not render governmental services and does not owe the public an honest services duty.

The proper course now is to dismiss the honest services charges against Mr. Hamrick. The prosecution's suggested course – to read the second superseding indictment to allege that he deprived the public of Governor Siegelman's honest services – will not work. It contradicts the plain language of the indictment. The facts alleged in the indictment do not support that charge. And it would result in intractable difficulties at trial.

There are some misconceptions in the prosecution's response that do not affect this central point. Mr. Hamrick deals with them at the end of this brief. But it is important to deal with one misconception at the outset. The prosecution's statement that Mr. Hamrick "moves to dismiss [the honest services charges] . . . [simply] because some of the mailings or wires occurred after he left public employment and thus are not within the ambit of the honest services fraud offense," *Response* at 1-2, is just wrong. As Mr. Hamrick made clear in his motion (pp. 1-3), the second superseding indictment alleges that Mr. Hamrick moved in and out of government

service during the period of the alleged honest services scheme. It alleges some acts of influence, some mailings, and a wire that occurred before he re-entered government service in Governor Siegelman's office. It alleges acts of influence and some mailings after he left Governor Siegelman's office. It does not say whether Mr. Hamrick was a public official or a private person when he allegedly received the purported payments from Mr. Young. It does not say which alleged acts of influence the prosecution contends Governor Siegelman committed and which it contends Mr. Hamrick committed. Therefore, the second superseding indictment may well allege payments, acts of influence, and mailings or wires that occurred entirely while Mr. Hamrick was a private citizen. It may allege payments and acts that occurred while he was private, and mailings or wires while he was a public official. There may be other combinations and permutations. There is no way to separate the period that Mr. Hamrick was a private person from these charges and therefore the Court should dismiss them.

## I. ARGUMENT

The prosecution concedes, as it must, that "[a private] defendant may not owe an independent duty to the State or citizenry." *Response* at 6. As Mr. Hamrick noted in his motion (pp. 9-15), the Third Circuit, in *United States v. Murphy*, 323 F.3d 102, 113-18 (3d Cir. 2003), and the Northern District of Illinois, in *United States v. Warner*, 252 F. Supp.2d 1051, 1063 (N.D. Ill. 2003) have held that there is no such duty. Moreover, in *United States v. Adler*, 274 F. Supp.2d 583, 587 (S.D.N.Y. 2003), the United States District Court for the Southern District of New York stated that the lone (so far as undersigned counsel is aware) pre-*McNally* decision to hold otherwise, *United States v. Margiotta*, 688 F.2d 108 (2d Cir. 1982) "was wrongly decided and is no longer good law in this Circuit or anyplace." The prosecution contends that the Court

should not dismiss the honest services charges, but should read the second superseding indictment to allege that Mr. Hamrick, "even when no longer being officially paid by the State of Alabama, intended to and did engage in a scheme to deprive the State of the honest services of Defendant Siegelman." *Response* at 7.

### A.  Plain Language

The first problem is that the second superseding indictment does not say that. It charges Mr. Hamrick and Governor Siegelman with "devis[ing] a scheme and artifice to defraud the State of Alabama of its right to the honest and faithful *services of themselves as public officials and employees of the State of Alabama.*" *Second Superseding Indictment* ¶¶ 28, 61 (emphasis supplied). It alleges that they did so "through their official powers, action, and influence."

There is no way to read the phrases "services of themselves" and "their official powers, action, and influence" other than to charge Mr. Hamrick with depriving the public of his own honest governmental services. This Court already has read them that way.

> Counts Ten through Twelve, in which Siegelman and Hamrick are named, charge them with aiding and abetting each other to commit honest services mail fraud as part of their scheme *to defraud and deprive the State of Alabama to its right to honest and faithful services from themselves as public officials* in connection with governmental regulation of specified activities, allocation of bond funding and construction contracting, in violation of 18 U.S.C. §§ 2, 1341 & 1346.  (Indict. at ¶ 61-63).
>
> Counts Thirteen and Fourteen, in which Siegelman and Hamrick are named, charge them with aiding and abetting each other to commit honest services mail[1] fraud concerning performance of their scheme *to defraud and deprive the State of Alabama of its right to honest and faithful*

---

[1]  The second superseding indictment actually appears to allege honest services wire fraud, as opposed to mail fraud, in Counts Thirteen and Fourteen, but that makes no substantive difference to this analysis.

> *services from themselves as public officials.*

*United States v. Scrushy*, 2006 WL 278251 *2-3 (M.D. Ala. February 2, 2006) (emphasis supplied).  The words "of themselves" do not mean "of Governor Siegelman."  The word "their" does not mean "Governor Siegelman's."

### B. Allegations Do Not Support The Charge

As Mr. Hamrick noted in his motion (p. 5, n. 4), some courts have held that private persons may commit honest governmental services fraud by depriving the public of a public official's honest services.  But those cases are about private persons who bribe (or pay illegal gratuities) to public officials or help them conceal material conflicts of interest.[2]  The

---

[2] As Mr. Hamrick noted in his motion (p. 5, n. 4), in *United States v. Lovett*, 811 F.2d 979 (7th Cir. 1987), the defendant was charged with bribing a mayor; in *United States v. Rauhoff*, 525 F.2d 1170 (7th Cir. 1975), the defendant was charged with bribing a Secretary of State.  The cases the prosecution cites in its response also involve bribes or failure to disclose material conflicts of interest.  In *United States v. Hasner*, 340 F.3d 1261 (11th Cir. 2003), a private consultant to a county housing authority paid the chairman of the authority a secret "commission" on a real estate project that required the authority's approval.  The Eleventh Circuit found that "a reasonable jury" could have found that the consultant was aware of and participated in the chairman's failure to disclose the commission before taking official action with respect to the project.  *Id.* at 1272.  In *United States v. Lopez-Lukis*, 102 F.3d 1164 (11th Cir. 1997), a lobbyist paid a county commissioner for her votes in favor of his clients' interests and for persuading other county commissioners to so vote.  *Id.* at 1165-66.  In *United States v. Sawyer*, 85 F.3d 713 (1st Cir. 1996), the final case the prosecution cites, a private lobbyist "paid for meals, rounds of golf, and other entertainment," including a trip to Puerto Rico, for Massachusetts legislators in exchange for their official acts.  *Id.* at 721.  In reversing the lobbyist's conviction for depriving the public of the legislators' honest governmental services, the First Circuit held that the basis for the charge had to be an illegal gratuity – not simply a violation of the prohibition in Massachusetts law of gifts

prosecution does not contend that Mr. Hamrick did such a thing. The second superseding indictment alleges that Mr. Hamrick received money (at some unspecified time) from Lanny Young, ¶ 30(f), and that he and Governor Siegelman "assist[ed]" Mr. Young "through their official power, actions, and influence," ¶ 30(g).

Undersigned counsel is aware of no case, and the prosecution has cited none, in which a private person has been charged with depriving the public of a public official's honest services on such facts. It is difficult to conceive how Mr. Hamrick can be so charged. The prosecution cannot charge him simply with taking money as a private citizen to influence Governor Siegelman's actions as, generally, that is not illegal. It is the daily business of lobbyists. Moreover, the second superseding indictment's contention that Mr. Hamrick exercised "official power, actions, [or] influence," *id.* ¶ 30(g), while a private citizen makes no sense. Private citizens do not have official power and cannot take official actions or exert official influence.

As Mr. Hamrick noted in his motion (pp. 7-8), federal courts in different circuits disagree about the source and nature of the duty to render honest governmental services.[3] But they are clear that the duty must be defined with clarity, so that a defendant "ha[s] fair warning that his

---

to public officials in excess of $100. It held that the payments had to disadvantage the public in order to violate the mail fraud statute. *Id.* at 725.

[3] *See, e.g., United States v. Murphy*, 323 F.3d 102, 117 (3d Cir. 2003) (actions must violate a "clearly established fiduciary relationship or legal duty in either federal or state law" owed to the public); *United States v. Brumley*, 116 F.3d 728, 734 (5th Cir. 1997) ("the official must act or fail to act contrary to the requirements of his job under state law"); *United States v. Sawyer*, 85 F.3d 713, 725 (1st Cir. 1996) (official's actions in response to illegal payment must harm the public).

conduct [as a private person] violated § 1346." *United States v. Warner*, 292 F. Supp.2d 1051, 1062 (N.D. Ill. 2003). If it is impossible even to say what the second superseding indictment alleges Mr. Hamrick did as a private citizen, it is impossible to articulate an applicable duty with the clarity necessary to warn others that their conduct may violate it.

The Eleventh Circuit stated its views on the nature of the honest governmental services duty very clearly in *United States v. Lopez-Lukis*, 102 F.3d 1164, 1169 (11th Cir. 1997):

> When a government officer decides how to proceed in an official endeavor – as when a legislator decides how to vote on an issue – his constituents have a right to have their best interests form the basis of that decision. If the official instead secretly makes his decision based on his own personal interests – as when an official accepts a bribe or personally benefits from an undisclosed conflict of interest – the official has defrauded the public of his honest services.

The Eleventh Circuit reiterated that view of the duty in early 1999, in *United States v. deVegter*, 198 F.3d 1324, 1328-30 (11th Cir. 1999). In between those two decisions, the United States Supreme Court cabined the federal prohibition on bribery and gratuities in *United States v. Sun-Diamond Growers*, 526 U.S. 398 (1999), holding that a payment **must** be linked to a specific official act, and that a gift given because of an official's position is not illegal without that link.[4]

---

[4] The Court based its decision on the requirement in 18 U.S.C. § 201 that both a bribe and a gratuity must be given "for or because of any official act performed or to be performed" by the public official.

> It seems to us that this means "for or because of some particular official act of whatever identity" – just as the question "Do you like any composer?" normally means "Do you like some particular composer?" It is linguistically possible, of course, for the phrase to mean "for or because of official

Adopting the prosecution's recommended course would require the Court to define a private person's duty in this context beyond the limits in these decisions. Mr. Hamrick respectfully contends that it cannot be done without rendering § 1346 unconstitutionally vague as applied to him in his private capacity.

## C. Intractable Problems at Trial

The problems would not end even if the Court were able to articulate a duty. It would have to divide the charges into four pieces: the period when Mr. Hamrick was in the Lieutenant Governor's office (when the public official duty applies); the period after he left that office (when the private person duty, whatever it is, applies); the period in which he was in the Governor's office (when the public official duty applies again); and the period after he left the Governor's office (when the private person duty applies again). It would have to filter the evidence relevant to each period, so that the jury does not hold Mr. Hamrick to the public official standard when he was a private person. It would have to charge the jury in a manner sufficient for the jury to figure out the new private-person duty and apply it properly. The potential for confusion, mistakes, multiple motions, and error is significant.

---

> acts in general, without specification as to which one" – just as the question "Do you like any composer?" could mean "Do you like all composers, no matter what their names or music?" But the former seems to us the more natural meaning, especially given the complex structure of the provision before us here. . . . . The insistence upon an "official act," carefully defined, seems pregnant with the requirement that some particular official act be identified and proved.

526 U.S. at 406.

## II. ADDITIONAL MISCONCEPTIONS IN PROSECUTION'S RESPONSE

In Part II, pages 4-5, the prosecution claims that it believes that Mr. Hamrick's motion to dismiss these charges is based on the facts. That belief is just wrong. Section I.A. (pp. 1-3) of Mr. Hamrick's motion, headed "The Allegations: Mr. Hamrick As A Private Citizen" is devoted to a summary of the allegations against him. It explains that the honest services "allegations encompass significant portions of time in which Mr. Hamrick was out of government service." *Hamrick Motion* at 2. Section I.B of Mr. Hamrick's motion, headed "The Law" (pp. 3-15), sets forth his argument, based on applicable case law, that the honest services allegations are legally insufficient for that reason. While this issue does not bear on the central point, it is important that the prosecution's error in this regard be corrected.

## III. CONCLUSION

For the foregoing reasons, Mr. Hamrick respectfully requests that the Court grant his motion to dismiss the honest services charges.

Respectfully submitted,


s/T. Jefferson Deen, III
T. Jefferson Deen, III
T. Jefferson Deen, III, P.C.
P.O. Box 2705
Mobile, Alabama 36652
Phone: (251) 433-5860
Fax:    (251) 433-0703
E-mail: TJeffDeen@deenlawpc.com


s/Michel Nicrosi
Michel Nicrosi
Miller, Hamilton, Snider & Odom, L.L.C.

P.O. Box 46
Mobile, Alabama 36601-0046
Phone: (251) 432-1414
Fax:    (251) 433-4106
E-mail: michelnicrosi@mhsolaw.com

**CERTIFICATE OF SERVICE**

I certify that on March 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

s/Michel Nicrosi
Michel Nicrosi
Miller, Hamilton, Snider & Odom, L.L.C.
P.O. Box 46
Mobile, Alabama 36601-0046
Phone: (251) 432-1414
Fax:    (251) 433-4106
E-mail: michelnicrosi@mhsolaw.com