IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Case No. 2:05-cr-119-MEF |
| | * | |
| PAUL MICHAEL HAMRICK | * | |

**REPLY BRIEF ON THE MOTION TO DISMISS AND STRIKE
THE "MISLEADING CONDUCT" PORTION
OF THE 18 U.S.C. § 1512(b)(3) CHARGE IN
COUNTS ONE, TWO, AND FIFTEEN**

A § 1512(b)(3) "misleading conduct" charge must allege that the defendant misled "another person," who in turn spoke to federal authorities.[1] The Second Circuit case Mr. Hamrick cited held that simply paying money, or offering to pay money, to the other person does not mislead him/her, and thus does not violate this provision, even if the defendant asks the other person to lie to federal authorities. *United States v. King*, 762 F.2d 232, 237-38 (2d Cir. 1985).[2] They based this reasoning on the legislative history of the Victim Witness Protection Act of 1982. *Id.* The second superseding indictment charges Mr. Hamrick only with paying money to Mr. Young (it does not allege that he asked Mr. Young to lie to or to withhold information from

---

[1] Section 1512(b)(3) forbids a defendant to "knowingly . . . engage[] in misleading conduct toward another person with intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . ."

[2] Mr. Hamrick also cited *United States v. Kulczyk*, 931 F.2d 542, 545-48 (9th Cir. 1991), in which the defendant asked a number of witnesses to lie and offered money to at least one of them, held likewise that "non-coercive, non-deceptive conduct," like asking a witness to tell a story that the witness knows is false, does not "mislead" the witness. *Id.* at 546.

federal authorities) and not with doing anything to mislead him.

The prosecution's response changes nothing.  The § 1512(b)(3) case the prosecution cited, *United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998), *cert. denied* 526 U.S. 1147 (1999), cited *King* with approval.  A brief discussion of *Veal* is important here, because the prosecution's response indicates that it has misunderstood that opinion – and particularly the portion that discusses the legislative history of § 1512(b)(3).  That misunderstanding apparently has led the prosecution to charge Mr. Hamrick with a violation of § 1512(b)(3) under an improper theory, not only as to the "misleading conduct" portion, but also as to the "corruptly persuades" portion. It apparently has charged Mr. Hamrick with conduct that it contends was designed to mislead or deceive federal investigators, but which it does not contend misled or corruptly persuaded Mr. Young (or was designed to do so).[3]  While not the specific subject of the pending motion, it will be better to deal with that apparent misunderstanding before trial, so that the trial is not tainted with evidence on that improper theory.

### The Veal Holding

*Veal* dealt with conduct that was not the payment of money (lying and presenting false evidence) and that *did* mislead the persons who spoke to federal authorities, who in that case were state investigators.  The primary issue[4] was whether a state investigator qualified as

---

[3]   While the indictment may allege, in terms, that Mr. Hamrick directed the supposed misleading conduct and corrupt persuasion at Mr. Young, the prosecution's response to Mr. Hamrick's motion indicates that it actually views the charge – mistakenly – as one for directing misleading conduct at federal investigators.

[4]   A related question was whether the defendant had to know that the state investigator would later speak to the FBI. *Id.* at 1247-52. The defendants also claimed the evidence was not sufficient to prove

"another person" under § 1512(b)(3) – that is, whether Congress meant to cover the misleading of state investigators who gather information about a crime and then speak to federal authorities, or just the misleading of people with firsthand knowledge of the crime. 153 F.3d at 1244-47. The Eleventh Circuit concluded, based primarily on the plain language of § 1512(b)(3), that "there is no ambiguity in 'another person,' which is easily and commonly understood to mean *any* person, regardless of whether he possessed knowledge of the commission or possible commission of a federal crime from being an eyewitness or an investigating official." *Id.* at 1245 (emphasis in original).

The Eleventh Circuit rejected the *Veal* defendants' request to apply the *ejusdem generis* principle of statutory construction in this context. *Ejusdem generis* is a Latin phrase meaning "of the same kind." The principle of statutory construction is that, "*only when there is some uncertainty as to the meaning of a particular clause in a statute,*" then, "where general words follow a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated." *United States v. Turkette*, 452 U.S. 576, 581 (1981) (emphasis supplied). Since the title of § 1512(b)(3) has the word "witness" in it,[5] the *Veal* defendants argued, the term "another person" should be limited to "the potential messenger or victim, who already possesses pertinent knowledge, rather than the recipient or investigator, who acquires information." 153 F.3d at 1245.

The Eleventh Circuit found no need to apply the *ejusdem generis* principle, because there

---

they had lied or presented false evidence. The Eleventh Circuit rejected those arguments. *Id.* at 1247-55.

[5] The title is "Tampering with a witness, victim, or informant."

was no uncertainty in the plain language about whether § 1512(b)(3) covered state investigators who speak to federal authorities.

> Nothing in the statutory language or the caption contains this artificial definition that [the defendants] advance. The title states 'witness'; it does not state or require that the witness have prior knowledge. Significantly, police officers, as a consequence of their occupation, become witnesses as a matter of course in each investigation in which they are involved. Thus, the terms used in the statutory title do not exempt police officers. The fact that Congress did not use restrictive language in drafting § 1512(b)(3) confirms our logical conclusion that "witness," as used in the caption, can be interpreted to encompass state investigators.

153 F.3d at 1246. The Eleventh Circuit emphasized, however, that the state investigators must speak to federal authorities, and that there is no violation of § 1512(b)(3) if they do not.

> [The defendants] argue that acceptance of the plain language of the statute would federally criminalize every false statement made by anyone to any police officer. The clear language of the statute, however, negates that interpretation because of the statutorily prescribed federal nexus with federal agencies and judges. . . .
>
> *    *    *    *    *    *    *    *    *    *
>
> [The defendants] used deception to thwart the investigation . . . by creating false and misleading information, which they related to state investigators with the knowledge that this information would be related to and relied upon by other investigators. To ensure that they would be exonerated of any wrongdoing . . ., they further used police officers and personnel, such as the technician photographer . . ., who they either knew would be or likely would be witnesses in the . . . investigation, as conduits to create false and misleading evidence about the events resulting in [the crime]. FBI agents who were investigating the possible commission of a civil rights crime were among the investigators who learned of and relied upon this contrived information and evidence provided by [the defendants].

*Id.* at 1246-47 (citation omitted – see below).

## **Veal's Citation to King With Approval**

The latter portion of this passage, 153 F.3d at 1247, contained an approving citation to

the Second Circuit's opinion in *King*. The approving citation specifically distinguished the *Veal* defendants' conduct, which did violate § 1512(b)(3), from the *King* defendant's conduct, which did not. The last two sentences of the above passage, with the citation to *King* included, read:

> To ensure that they would be exonerated of any wrongdoing . . ., they further used police officers and personnel, such as the technician photographer . . ., who they either knew would be or likely would be witnesses in the . . . investigation, as conduits to create false and misleading evidence about the events resulting in [the crime]. **Cf. United States v. King, 762 F.2d 232 (2d Cir. 1985) (observing that § 1512(b)(3) should not have been charged because the alleged misleading conduct, outright subornation of perjury, did not involve any deceptive or misleading conduct).** FBI agents who were investigating the possible commission of a civil rights crime were among the investigators who learned of and relied upon this contrived information and evidence provided by [the defendants].

153 F.3d at 1247 (emphasis supplied).

The *King* defendant offered another person money, and asked him to lie to federal authorities. The prosecution here does not charge Mr. Hamrick even with that much. It charges him simply with paying money to Mr. Young. If, as *Veal* noted, the *King* defendant's conduct did not violate the "misleading conduct" portion of § 1512(b)(3), Mr. Hamrick's alleged conduct certainly does not.

<u>**Veal's Discussion of the Legislative History**</u>

Having concluded that the plain language of § 1512(b)(3) covers the misleading of state investigators who speak to federal investigators, the Eleventh Circuit rejected the *Veal* defendants' request to delve into the legislative history.

> Review of legislative history is unnecessary "unless a statute is inescapably ambiguous." Therefore, we deem the plain language of the statute to be conclusive as clearly expressing legislative intent, unless the resulting application would be "absurd" or "internal inconsistencies" must be resolved.

    \* \* \* \* \* \* \* \* \* \*

> [U]sing th[e] common definition [of "another person" to include state investigators who speak to federal authorities] does not lead to an absurd result . . . . [and] does not render the statute redundant, implausible, or inconsistent with other sections.

153 F.3d at 1245-46.

  In passing, the Eleventh Circuit quoted page 18 of the Senate Report relating to the original version of the Victim Witness Protection Act, noting that "[e]ven if review of the legislative history were appropriate, it rejects the rule of *ejusdem generis* and discredits the restrictive view of the statute presented by [the defendants]." 153 F.3d at 1247. The Eleventh Circuit quoted the following passages from that page of the report:

> the purpose of preventing an obstruction or miscarriage of justice cannot be fully carried out by a simple enumeration of the commonly prosecuted obstruction offenses. *There must also be protection against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice.*
>
>  \* \* \* \* \* \* \* \* \* \*
>
> [The Senate Judiciary Committee] does not intend that the doctrine of *ejusdem generis* be applied to limit the coverage of [subsection (b)(3)]. Instead, the analysis should be functional in nature to cover conduct the function of which is to tamper with a witness, victim, or informant in order to frustrate the ends of justice. *For example, a person who induces another to remain silent or to give misleading information to a Federal law enforcement officer would be guilty under subsection [(b)(3)], irrespective of whether he employed deception, intimidation, threat, or force as to the person.*

*Id.* (emphasis supplied by the Eleventh Circuit, not by the Committee).

  It is important to note that these passages dealt with the *original version* of § 1512(b)(3).[6]

---

 [6] In the original version, subsection (b)(3) was denominated subsection (a)(3). *See Veal*, 153 F.3d at 1247 n. 18.

Specifically, they dealt with a residual, catchall provision in the original version *that Congress removed* from the final version that passed. That residual, catchall provision read very differently from the version of § 1512(b)(3) that passed. It encompassed a broader range of conduct, including conduct designed to mislead federal investigators without misleading or corruptly persuading another person. When the Committee said, in the report, that it "does not intend that the doctrine of *ejusdem generis* be applied to limit the coverage of this subsection," and that "[t]here must also be protection against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice," as *Veal* quoted it above, the Committee meant the later-deleted, residual, catchall provision – not the version of § 1512(b)(3) that passed and that is before the Court on the pending motion. *S. Rep. No. 532, 97th Cong., 2d Sess. at 18, reprinted in 1982 U.S. Code Cong. & Ad. News 2515, 2524.*

The Second Circuit made this clear in *King,* discussing some of the same language on the same page of the same report. The Second Circuit concluded that the removal of the residual, catchall provision – especially in light of the language about that provision in the report – meant that Congress intended to limit § 1512(b)(3)'s "misleading conduct" provision to conduct directed at "another person," who in turn speaks to federal investigators. By removing the residual, catchall provision, Congress evidenced its intent *not* to cover, in § 1512(b)(3), conduct simply designed to mislead federal investigators, that does not mislead "another person" who speaks to those investigators.

> By its terms, § 1512 does not purport to reach all forms of tampering with a witness, but only tampering by specified means, *i.e.*, by use or attempted use of "intimidation" or "physical force" or "threat[]" or by "engaging in misleading conduct toward another person." . . . No rational juror could conclude from the [relevant] conversations – in which King urged Orgovan that the two should stick together, that Orgovan should not

7

implicate King but only Dennis, and that Orgovan's silence would be rewarded financially – that Orgovan was in any way misled. Since the only allegation in the indictment as to the means by which King induced Orgovan to withhold testimony was that King misled Orgovan, and since the evidence failed totally to support any inference that Orgovan was, or even could have been, misled, the conduct proven by the government was not within the terms of § 1512.

The government contends that, notwithstanding the actual language of § 1512, Congress meant for § 1512 to reach conduct that was not misleading to the person at whom it was directed but was intended to mislead the government. . . .  We are unpersuaded.

*    *    *    *    *    *    *    *    *    *

[T]he original bill that led to the enactment of the Act contained, in addition to the eventually enacted enumeration of specific types of conduct to be reached, a catchall section designed to reach any person who "corruptly, by threats of force, or by any threatening letter or communication, intentionally influences, obstructs, or impedes or attempts to influence, obstruct, or impede the . . . enforcement and prosecution of federal law." S. 2420, 97th Cong., 2d Sess., sec. 201(a), § 1512(a)(3), 128 Cong. Rec. S11,439 (daily ed. Sept. 14, 1982).  The Senate Judiciary Committee opined that the prevention of obstructions of justice could not be fully carried out by a simple enumeration of the commonly prosecuted obstruction offenses and stated that the residual [or catchall] section was not intended to be limited by the doctrine of ejusdem generis. S. Rep. No. 532, 97th Cong., 2d Sess. 18, *reprinted in* 1982 U.S. Code Cong. & Ad. News 2515, 2524.  Thus, the Senate Report stated that the residual section was intended to reach, *inter alios*, "a person who induces another to remain silent or to give misleading information to a Federal law enforcement officer . . . irrespective of whether he employed deception, intimidation, threat, or force as to the person." *Id.* (footnote omitted). ***The residual section, however, was deleted from the Act as finally passed.  We agree with the courts in United States v. Lester and United States v. Beatty that the legislative history of § 1512 does not suggest that Congress intended that section, as enacted, to reach modes of conduct other than those enumerated there.***

762 F.2d at 237-38 (emphasis supplied).

## The Prosecution's Misunderstanding of Veal

The prosecution mistakenly relies on *Veal*'s citation to these passages from the report,

8

dealing with the omitted catchall provision in the original version. It apparently believes those passages from the report are authority for the (incorrect) proposition that a defendant's conduct violates § 1512(b)(3) if it simply misleads federal investigators, even if it does not mislead "another person" who speaks to those investigators:

> The Eleventh Circuit, in [*Veal*], affirmed the convictions of several defendants under Section 1512(b)(3) because they engaged in "misleading conduct" through "activities designed to create witnesses as part of a cover-up and to use unwitting third parties or entities to deflect the efforts of law enforcement agents in discovering the truth." *Id.* at 1247. The Court described Section 1512(b)(3) as a "broad" statute, *id.* at 1246, and noted that Congress created Section 1512 (as well as Section 1513) to provide for an "entirely new and broader set of obstruction of justice offenses" than was covered by the earlier version of 18 U.S.C. § 1503. *Id.* at 1247 n. 17. Congress' intent in passing Section 1512(b)(3) was to provide "protection against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice.'" *Id.* at 1247 (quoting Victim & Witness Protection Act of 1982, S. Rep. No. 97-532, at 18 (1982), reprinted in 1982 U.S.C.C.A.N. 2515, 2524). Section 1512(b)(3) thus covers any "conduct the function of which is to tamper with a witness, victim, or informant in order to frustrate the ends of justice.'" *Id.*

*Response* at 3. *Veal* does not stand for what appears to be the prosecution's broad proposition that "activities designed . . . to deflect the efforts of law enforcement agents in discovering the truth" are § 1512(b)(3) "misleading conduct." Rather, *Veal* stands for the proposition that those activities fall within § 1512(b)(3) if they are aimed at any person, including a state investigator, *who speaks* to federal investigators.

Moreover, whatever the Eleventh Circuit's purpose was in citing these passages from the Senate Report in *Veal*, it was not to express disagreement with *King*. As set forth above, the Eleventh Circuit in *Veal* did just the opposite, expressing its agreement that the *King* defendant's conduct did not fall within § 1512(b)(3).

Given the prosecution's mistaken reading of *Veal*, and its reliance on passages from the Senate Report dealing with the omitted catchall provision, there is a very real possibility that the prosecution has charged Mr. Hamrick with an entirely improper theory of § 1512(b)(3) obstruction. That is, there is a very real possibility that the prosecution, despite the words it used in the second superseding indictment, has charged him simply with alleged conduct that it believes he designed to "deflect the efforts" of federal investigators – and that it does not contend either misled or corruptly persuaded Mr. Young, or that Mr. Hamrick designed to do so.

The corrupt persuasion portion of § 1512(b)(3) likewise requires action that impacts "another person" who speaks to federal investigators. For example, in a leading "corrupt persuasion" decision from the Eleventh Circuit, *United States v. Shotts*, 145 F.3d 1289, 1301 (11th Cir. 1998), *cert. denied* 525 U.S. 1177 (1999), a lawyer was convicted under this provision for asking his secretary "not [to] say anything" to federal investigators. The Ninth Circuit, in *United States v. Khatami*, 280 F.3d 907, 910 (9th Cir. 2001), *cert. denied* 535 U.S. 1068 (2002), made this clear in discussing the meaning of the term "persuade." Noting that its task, in interpreting this portion of § 1512(b)(3), was to determine "the type of conduct that would constitute an attempt to corruptly persuade *a potential witness*," 280 F.3d at 910 (emphasis supplied), the court stated:

> The verb "persuade" has many definitions, but within the context of § 1512(b)(3) can be understood to mean "to coax," *Oxford English Dictionary* (2d ed. 1989); "to plead with," *Merriam Webster's Collegiate Dictionary* at 868; or "[t]o induce one by argument, entreaty, or expostulation into a determination, decision, conclusion, belief, or the like; to win over by an appeal to one's reason and feelings, as into doing something or believing something." *Black's Law Dictionary* at 1144-45.

280 F.3d at 910.

**Conclusion and Note With Respect to Potential Taint**

The present motion is directed at the allegations against Mr. Hamrick with respect to "misleading conduct." Mr. Hamrick respectfully submits that his motion, this reply, and the decisions in *King, Kulczyk*, and *Veal* are sufficient reasons to dismiss and strike that portion of the § 1512(b)(3) obstruction charge in Count Fifteen (and the corresponding portions of Counts One and Two).

He respectfully requests, however, that, in light of the prosecution's response, the Court – at a time and in a manner that it deems appropriate – determine whether, in fact, the prosecution also has charged Mr. Hamrick with "corrupt persuasion" under the improper theory articulated in its response. If it has, and if it in fact does not contend that Mr. Hamrick either misled Mr. Young or corruptly persuaded him (or designed to do so), the rest of the § 1512(b)(3) charge has no place in this case. Obstruction charges are highly prejudicial and can taint the jury's view of the evidence on the other offenses with which the prosecution charges Mr. Hamrick. Those other charges have significant problems of their own, as Mr. Hamrick's honest services motion has made clear. Allowing the jury to hear evidence – even if it is later told to disregard it – on an improper obstruction theory creates the very real prospect of reversible error.

    Respectfully submitted,

    s/T. Jefferson Deen, III
    T. Jefferson Deen, III
    T. Jefferson Deen, III, P.C.

        P.O. Box 2705
        Mobile, Alabama 36652
        Phone: (251) 433-5860
        Fax:    (251) 433-0703
        E-mail: TJeffDeen@deenlawpc.com


        s/Michel Nicrosi
        Michel Nicrosi
        Miller, Hamilton, Snider & Odom, L.L.C.
        P.O. Box 46
        Mobile, Alabama 36601-0046
        Phone: (251) 432-1414
        Fax:    (251) 433-4106
        E-mail: michelnicrosi@mhsolaw.com


## **CERTIFICATE OF SERVICE**

    I certify that on March 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.


        s/Michel Nicrosi
        Michel Nicrosi
        Miller, Hamilton, Snider & Odom, L.L.C.
        P.O. Box 46
        Mobile, Alabama 36601
        Phone: (251) 432-1414
        Fax:    (251) 433-4106
        E-mail: michelnicrosi@mhsolaw.com