IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Case No. 2:05-cr-119-MEF |
| | * | |
| PAUL MICHAEL HAMRICK | * | |

**MOTION IN LIMINE REGARDING EVIDENCE AND
ARGUMENT REGARDING ALLEGED 18 U.S.C. § 1512(b)(3)
OBSTRUCTION OF JUSTICE IN COUNTS ONE, TWO, AND FIFTEEN**

Mr. Young's grand jury testimony establishes that Mr. Hamrick never misled or "corruptly persuaded" him, or tried to do so. The prosecution's evidence at trial – unless Mr. Young flatly contradicts his sworn testimony – therefore will fail to prove 18 U.S.C. § 1512(b)(3) obstruction of justice.

The prosecution now appears to argue that Mr. Hamrick violated § 1512(b)(3) by trying to fool federal investigators – not by trying to mislead or persuade Mr. Young. That is a wholly improper theory. Established case law, approved by the Eleventh Circuit, soundly rejects it.

This presents a practical problem. Unless Mr. Young contradicts his sworn testimony, the § 1512(b)(3) charges will fail on Mr. Hamrick's Rule 29 motion at the close of the prosecution's case. But, by then, the jury will have heard evidence of "obstruction." No dismissal order or curative instruction can lessen the detrimental impact such evidence inevitably has in the courtroom.

A brief session outside the presence of the jury can solve the problem. Mr. Young's testimony on this subject is brief (two pages in the grand jury transcript). Cross-examination can be equally brief. The Court should consider the prosecution's evidence and argument and Mr. Hamrick's response before the jury hears Mr. Young's testimony. Mr. Young will be on the

stand for a long time, testifying on a number of subjects. The Court may hold this brief session during a regularly-scheduled break or at the beginning or end of a trial day.

Mr. Young's sworn testimony should not change. The Court can then dismiss the § 1512(b)(3) charge against Mr. Hamrick so that it cannot improperly taint the proceedings. The prosecution's improper fool-the-investigators theory will not change the result.

## I. ARGUMENT

### A. Section 1512(b)(3) and the Second Superseding Indictment's Allegations

18 U.S.C. § 1512(b)(3) forbids a defendant to engage in, among other things, "misleading conduct" and/or "corrupt persuasion" directed at "another person" who speaks – or is to speak – to federal authorities. It provides:

> Whoever knowingly . . . corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to –
>
> \*   \*   \*   \*   \*   \*   \*   \*   \*   \*
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . .
>
> shall be fined under this title or imprisoned . . . or both.

In the second superseding indictment, the prosecution contends that the "[]other person" was Mr. Young. It alleges:

> On or about October 9, 2001, in the Middle District of Alabama, the defendant PAUL MICHAEL HAMRICK did knowingly corruptly persuade another person and attempt to knowingly corruptly persuade another person, and did engage in misleading conduct toward another person, with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission of a federal offense and a possible commission of a federal offense, to wit, defendant PAUL MICHAEL HAMRICK did give a check

2

      in the amount of $3,000 to Clayton "Lanny" Young with intent to hinder, delay, and prevent communication to the Federal Bureau of Investigation by Clayton "Lanny" Young of information concerning federal offenses related to $6,000 that Clayton "Lanny" Young gave to PAUL MICHAEL HAMRICK on September 25, 2000.

*Second Superseding Indictment* ¶¶ 34, 66.

## B. Mr. Young's Grand Jury Testimony

Mr. Young testified that he was not misled or persuaded. His testimony makes clear that Mr. Hamrick never tried to do so:

    Q.    Now, there is a check that you have provided to us and/or that we've gotten from your bank accounts in the amount of $6,000 that you wrote to Paul Hamrick on September 25th.

    MR. FEAGA: Is that the right date, Mr. Perrine?

    MR. PERRINE: Yes, sir. Yes, sir.

    Q.    September the 25th of 2000. There's a check for $6,000 that you wrote to him. Would you tell the ladies and gentlemen of the grand jury why you wrote a $6,000 check to Paul Hamrick in September of 2000?

    A.    Yeah. He had called me and said that he was – there was some stock dealings with Anthony Fant, and [Trava] Williams, I think, was his stock broker. He did a lot for all of us. And anyway, he needed $6,000 to buy either Anthony's stock or some stock they thought Anthony was going to buy or something. So he needed to cover a check that he had written to the brokerage firm.

    Q.    Okay. And did you give him $6,000 in response to his request for it?

    A.    Yes.

    Q.    And was that part of your continuing agreement with these gentlemen?[1]

---

[1]     While it is not the subject of this motion, it is worth noting that Mr. Young's grand jury transcript, and other grand jury transcripts, are replete with leading questions, as this passage makes clear. The

A. It was.

Q. Okay. Now, did there come an occasion in approximately October of 2001, about 14 months later, where Mr. Hamrick gave you a check? Again, this is after this investigation becomes known. It's after Mr. Bailey has given you the check that you talked about. Did there come an occasion where Mr. Hamrick gave you a check for $3,000?

A. He did.

Q. What if anything was – did – what if anything did he tell you about why he was giving you that check?

A. He just said that this is – here's my 3,000 back of that $6,000 investment we made.

Q. And what was your reaction to that? What is your reaction today to that?

A. The "we" part. I didn't buy it. It wasn't – that 6,000 for Paul for what he had bought he had covered. It wasn't a deal that we had made to go in together and do 3,000 apiece. But I guess what he was saying, half of it was yours, I'm giving you my half back.

Q. Did you view that as another effort by one of these gentlemen to re-create the truth about what had really happened?

A. Yeah.

Q. Did you view it as an effort to cover his tracks again, however you put it, in return – in regards to why he might have taken $6,000 from you in September of 2000?

A. That's the way I took it. Yes.

*Young Federal Grand Jury Testimony* 46/10 – 48/8 (October 19, 2005)[2].

---

      prosecution's need to resort to leading questions in a one-sided forum casts serious doubt on its ability to elicit the same testimony at trial with non-leading questions.

[2]   The grand jury transcript is not attached to this motion due to the sensitive nature of grand jury materials. Mr. Hamrick will provide the Court with a copy upon

## C. The Law: "Another Person" Not Federal Authorities

Congress passed § 1512(b)(3) as part of the Victim and Witness Protection Act of 1982. *United States v. King*, 762 F.2d 232, 237-38 (2d Cir. 1985); *see also United States v. Veal*, 153 F.3d 1233, 1246-47 (11th Cir. 1998), *cert. denied* 526 U.S. 1147 (1999). The original version of the Act had a residual, catch-all provision that was much broader than § 1512(b)(3). *King*, 762 F.2d at 237-38. This broader provision "provide[d] that a person is guilty of an offense if he corruptly . . . intentionally influences obstructs, or impedes or attempts to influence, obstruct, or impede the enforcement and prosecution of federal law under which an official proceeding is being conducted, or the exercise of a legislative power of inquiry." S. Rep. No. 532, 97th Cong., 2d Sess. 18, *reprinted in* 1982 U.S. Code Cong. & Ad. News 2515, 2523.

The broader provision almost certainly would have permitted the prosecution's fool-the-investigators theory. But it did not pass. In *United States v. King*, 762 F.2d at 237-38, the Second Circuit held that, by not passing the broader provision, Congress made plain its intent that § 1512(b)(3) not reach conduct designed only to fool federal investigators, if that conduct is not aimed to mislead or corruptly persuade "another person" who speaks – or is to speak – to those investigators.

> By its terms, § 1512 does not purport to reach all forms of tampering with a witness, but only tampering by specified means, *i.e.*, by use or attempted use of "intimidation" or "physical force" or "threat[]" or by "engaging in misleading conduct toward another person." . . . No rational juror could conclude from the [relevant] conversations – in which King urged Orgovan that the two should stick together, that Orgovan should not implicate King but only Dennis, and that Orgovan's silence would be rewarded financially – that Orgovan was in any way misled. Since the evidence failed totally to support any inference that Orgovan was, or even

---

request.

could have been, misled, the conduct proven by the government was not within the terms of § 1512.

The government contends that, notwithstanding the actual language of § 1512, Congress meant for § 1512 to reach conduct that was not misleading to the person at whom it was directed but was intended to mislead the government. . . . We are unpersuaded.

*   *   *   *   *   *   *   *   *   *

[T]he original bill that led to the enactment of the Act contained, in addition to the eventually enacted enumeration of specific types of conduct to be reached, a catchall section designed to reach any person who "corruptly, by threats of force, or by any threatening letter or communication, intentionally influences, obstructs, or impedes or attempts to influence, obstruct, or impede the . . . enforcement and prosecution of federal law." S. 2420, 97th Cong., 2d Sess., sec. 201(a), § 1512(a)(3), 128 Cong. Rec. S11,439 (daily ed. Sept. 14, 1982). The Senate Judiciary Committee opined that the prevention of obstructions of justice could not be fully carried out by a simple enumeration of the commonly prosecuted obstruction offenses and stated that the residual [or catchall] section was not intended to be limited by the doctrine of ejusdem generis. S. Rep. No. 532, 97th Cong., 2d Sess. 18, *reprinted in* 1982 U.S. Code Cong. & Ad. News 2515, 2524. Thus, the Senate Report stated that the residual section was intended to reach, *inter alios*, "a person who induces another to remain silent or to give misleading information to a Federal law enforcement officer . . . irrespective of whether he employed deception, intimidation, threat, or force as to the person." *Id.* (footnote omitted). ***The residual section, however, was deleted from the Act as finally passed. We agree with the courts in United States v. Lester and United States v. Beatty that the legislative history of § 1512 does not suggest that Congress intended that section, as enacted, to reach modes of conduct other than those enumerated there.***

762 F.2d at 237-38 (emphasis supplied). The Eleventh Circuit, in *Veal*, cited *King* with

approval. 153 F.3d at 1247.[3]

---

[3] "To ensure that they would be exonerated of any wrongdoing . . ., they further used police officers and personnel, such as the technician photographer . . ., who they either knew would be or likely would be witnesses in the . . . investigation, as conduits to create false and misleading evidence about the events resulting in

## D. The Prosecution's Improper Theory

In its response to Mr. Hamrick's motion to dismiss, the prosecution argued:

> The Eleventh Circuit [in *Veal*] affirmed the convictions of several defendants under Section 1512(b)(3) because they engaged in "misleading conduct" through "activities designed to create witnesses as part of a cover-up and to use unwitting third parties or entities to deflect the efforts of law enforcement agents in discovering the truth." *Id.* at 1247. The Court described Section 1512(b)(3) as a "broad" statute, *id.* at 1246, and noted that Congress created Section 1512 (as well as Section 1513) to provide for an "entirely new and broader set of obstruction of justice offenses" than was covered by the earlier version of 18 U.S.C. § 1503. *Id.* at 1247 n. 17. Congress' intent in passing Section 1512(b)(3) was to provide "protection against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice.'" *Id.* at 1247 (quoting Victim & Witness Protection Act of 1982, S. Rep. No. 97-532, at 18 (1982), reprinted in 1982 U.S.C.C.A.N. 2515, 2524). Section 1512(b)(3) thus covers any "conduct the function of which is to tamper with a witness, victim, or informant in order to frustrate the ends of justice.'" *Id.*[4]

It is difficult, if not impossible, to read that passage as anything other than an argument that Mr. Hamrick is guilty if he meant to fool investigators, but not to mislead or corruptly persuade Mr. Young. It is particularly difficult to do so in light of the prosecution's questions:

---

[the crime]. *Cf. United States v. King*, 762 F.2d 232 (2d Cir. 1985) (observing that § 1512(b)(3) should not have been charged because the alleged misleading conduct, outright subornation of perjury, did not involve any deceptive or misleading conduct). FBI agents who were investigating the possible commission of a civil rights crime were among the investigators who learned of and relied upon this contrived information and evidence provided by [the defendants]."

[4]   *Veal* held that the term "another person" in Section 1512(b)(3) can include state investigators, if those investigators later communicate with federal authorities. It did not hold that conduct designed simply to fool federal authorities, without misleading or corruptly persuading "another person," is a violation. Indeed, as already noted, *Veal* cited *King* with approval. *King* held that such conduct is not a violation.

7

"Did you view that as another effort by one of these gentlemen to re-create the truth about what had really happened?" and "Did you view it as an effort to cover his tracks again[?]"

The prosecution relied on the legislative history of the residual, catchall provision **that did not pass.** Congress's failure to pass that provision undermines that argument, as the Second Circuit noted in *King*.

The prosecution's theory is improper. Section 1512(b)(3) does not prohibit efforts generally to "cover tracks" or "re-create the truth." It prohibits only efforts to mislead or corruptly persuade another person, if that person speaks or is to speak to federal investigators.

Mr. Young's testimony could not be clearer. Mr. Hamrick just gave him a check and "said that this is – here's my 3,000 back of that $6,000 investment we made." Mr. Young does not say that Mr. Hamrick tried to fool him or that Mr. Hamrick said or did anything in an effort to persuade him to do anything. Mr. Young is quite clear that he was not fooled: "I didn't buy it."

### E.  Procedure in the Courtroom

It would be extraordinarily unfair to Mr. Hamrick to allow the prosecution to bandy about charges of "obstruction" against him. The above evidence does not support a § 1512(b)(3) charge and the prosecution's articulated theory is wholly improper. Indeed, the above evidence establishes that Mr. Hamrick did not obstruct justice at all.

But, once the prosecution accuses him to the jury of obstruction, it will be impossible to remove the taint. No dismissal or curative instruction can solve the problem.

The simple procedure Mr. Hamrick outlined above solves the problem. Mr. Young is one of the prosecution's two chief witnesses and an alleged co-conspirator. He offers evidence

against multiple defendants on a wide range of topics. Taking a few minutes during a break or at the beginning or end of a day to evaluate this evidence and the prosecution's theory will not delay the trial. If Mr. Young maintains the same sworn testimony, the Court can dismiss the charges before they taint the proceedings.

    Respectfully submitted,

    s/T. Jefferson Deen, III
    T. Jefferson Deen, III
    T. Jefferson Deen, III, P.C.
    P.O. Box 2705
    Mobile, Alabama 36652
    Phone: (251) 433-5860
    Fax:    (251) 433-0703
    E-mail: TJeffDeen@deenlawpc.com

    s/Michel Nicrosi
    Michel Nicrosi
    Miller, Hamilton, Snider & Odom, L.L.C.
    P.O. Box 46
    Mobile, Alabama 36601-0046
    Phone: (251) 432-1414
    Fax:    (251) 433-4106
    E-mail: michelnicrosi@mhsolaw.com

**CERTIFICATE OF SERVICE**

      I certify that on April 3, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

      s/Michel Nicrosi
      Michel Nicrosi
      Miller, Hamilton, Snider & Odom, L.L.C.
      P.O. Box 46
      Mobile, Alabama 36601
      Phone: (251) 432-1414
      Fax:   (251) 433-4106
      E-mail: michelnicrosi@mhsolaw.com