IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 2:05-CR-119-MEF |
| DON EUGENE SIEGELMAN, | ) | |
| PAUL MICHAEL HAMRICK, | ) | |
| GARY MACK ROBERTS, and | ) | |
| RICHARD M. SCRUSHY | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT HAMRICK'S MOTION IN LIMINE TO BAR EVIDENCE AND ARGUMENT REGARDING ALLEGED PAYMENTS MADE BY MR. YOUNG TO MR. HAMRICK**

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting United States Attorney for the Middle District of Alabama, and Andrew C. Lourie, Acting Chief of the Public Integrity Section of the Criminal Division of the United States Department of Justice, and hereby files its Response to Defendant Hamrick's Motion in Limine to Bar Evidence and Argument Regarding Alleged Payments Made by Mr. Young to Mr. Hamrick (hereinafter, the "Motion"). In the Motion, Defendant Hamrick moves this Court to bar all evidence and argument pertaining to his acceptance of monetary payments from "Lanny" Young. He argues, pursuant to his erroneous interpretation of "honest services," that his acceptance of money from Mr. Young does not fall within the conduct prohibited by 18 U.S.C. § 1346,[1] because the Government cannot prove a quid

---

[1] Defendant Hamrick is charged with honest services mail fraud in Counts 10 through 12, pursuant to §§ 1341 and 1346; and honest services wire fraud in Counts 13 and 14, pursuant to §§ 1343 and 1346. "Except for the jurisdictional nexus (mails in § 1341, interstate wires in § 1343), the statutes are the same, are interpreted identically, and cases decided under one are controlling under the other." United States v. deVegter, 198 F.3d 1324, 1327 n.1 (11th Cir. 1999), cert. denied, 530 U.S.1264 (2000). Thus, the United States, in this Response, applies the jurisprudence of honest services fraud without differentiating between the mail and wire fraud statutes.

1

pro quo for each payment, that is, that each time he accepted money from Mr. Young it was in exchange for a specific benefit for Mr. Young.

## I. This Motion Should Be Denied Because it is Premature

The Eleventh Circuit has spoken to the question of a deprivation of honest services by a public official as follows:

> When a government officer decides how to proceed in an official endeavor – as when a legislator decides how to vote on an issue – his constituents have a right to have their best interests form the basis of that decision. If the official instead secretly makes his decision based on his own personal interests – as when an official accepts a bribe or personally benefits from an undisclosed conflict of interest – the official has defrauded the public of his honest services.

United States v. Lopez-Lukis, 102 F.3d 1164, 1169 (11th Cir. 1997). See also United States v. deVegter, 198 F.3d 1324, 1328 (11th Cir. 1999), cert. denied, 530 U.S. 1264 (2000). At trial, the Government will present evidence establishing beyond a reasonable doubt that Defendant Hamrick's conduct falls squarely within the heartland of honest services fraud.

Because Defendant Hamrick's argument is nothing more than a thinly-veiled sufficiency-of-the-evidence claim, his Motion should be denied. Defendant Hamrick has been properly indicted; therefore, the Government is entitled to present its evidence at trial. Of course, Defendant Hamrick may raise a Rule 29 motion at the end of the Government's case-in-chief. See United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) ("A motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases because there is no explicit

---

In relevant part, 18 U.S.C. §§ 1341 and 1343 provide, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . [uses the mails or wires, or causes their use] for the purpose of executing such scheme or artifice . . . [shall be punished]." Section 1346 defines "scheme or artifice to defraud" as "a scheme or artifice to deprive another of the intangible right of honest services."

authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Procedure."); United States v. Triumph Capital Group, Inc., 260 F. Supp. 2d 444, 448 (D. Conn. 2002) ("It is axiomatic that . . . a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence. Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary sufficiency.") (quotations and citation omitted). To entertain this Motion at this procedural juncture, the Court would inject into this proceeding a creature foreign to criminal procedure – the summary judgment motion. See United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per curium) ("There is no summary judgment procedure in criminal cases [nor d]o the rules provide for a pre-trial determination of sufficiency of the evidence."). Therefore, the Motion should be denied.

## II. Section 1346 does not Require a Showing of a Quid Pro Quo

In arguing the insufficiency of the evidence he anticipates the Government will introduce against him at trial, Defendant Hamrick insists that Eleventh Circuit jurisprudence requires that any bribery act in the honest services fraud offense be based on a quid pro quo. In arriving at this conclusion, he erroneously surmises that the logical source of the duty required to be breached for the commission of honest services fraud must be the federal law bribery statute, 18 U.S.C. § 201,[2] which requires proof of a specific corrupt benefit linked to a specific, identifiable act by the public official, pursuant to United States v. Sun-Diamond Growers, 526 U.S. 398 (1999). Hamrick's novel

---

[2]18 U.S.C. § 201© provides, in pertinent part, that anyone who

> otherwise than as provided by law for the proper discharge of official duty . . . directly or indirectly gives, offers, or promises anything of value to any public official . . . for or because of any official act performed or to be performed by such public official . . . shall be fined under this title or imprisoned for not more than two years, or both.

3

argument of a quid pro quo requirement for honest services fraud is based on his improper reading of deVegter in light of Sun-Diamond.

Eleventh Circuit jurisprudence clearly nullifies the premise upon which Defendant Hamrick's entire sequence of conclusions is based, that is, that the concept of fraud in the honest services statute is tied to Section 201. The Eleventh Circuit has repeatedly held that the duty to render honest services is a fiduciary duty.[3] See, e.g., deVegter, 198 F.3d at 1328 ("Public officials inherently owe a fiduciary duty to the public to make governmental decisions in the public's best interest."); Lopez-Lukis, 102 F.3d at 1169 (same); United States v. Paradies, 98 F.3d 1266, 1281-82 (11th Cir. 1996) (teaching that a conviction for aiding and abetting a public official in a scheme to defraud the public of honest services does not require that an independent duty exist between the defendant and the public; the defendant actively participated in the breach of the public official's fiduciary duty), cert. denied, 521 U.S. 1106, and cert. denied, 522 U.S. 1014 (1997); Castro v. United States, 248 F. Supp. 2d 1170, 1189 (S.D. Fla. 2003) ("The Eleventh Circuit has unambiguously stated that public officials owe inherent fiduciary duties to the public and that violations of the same are proper predicates to convictions under § 1346."). In addition, a person without formal office may be held to be a public fiduciary if others rely on him because of "'a special relationship in the government and he is in fact makes governmental decisions.'" deVegter, 198 F.3d at 1328 n. 3 (quoting McNally v. United States, 483 U.S. 350, 355 (1987)). Because the Eleventh Circuit has clearly held that the source of the duty

---

[3]Defendant Hamrick incorrectly states that, since the enactment of Section 1346, the alleged debate concerning the meaning of "honest services" "now occurs in the context of statutory interpretation of Section 1346 instead of application of the pre-1987 judge-made doctrine." Motion, at 4. The Eleventh Circuit considers pre-McNally v. United States, 483 U.S. 350 (1987), case law as authority in evaluating the scope of honest services fraud. United States v. Lopez-Lukis, 102 F.3d 1164, 1169 (11th Cir. 1997).

encompassed by Section 1346 is not rooted in Section 201, the quid pro quo requirement announced in Sun-Diamond does not apply to honest services fraud. Such an inflexible rule would narrow the parameters of Section 1346 and "'belie a clear congressional intent to construe the mail fraud statute broadly.'" Lopez-Lukis, 102 F.3d at 1171 (quoting United States v. Castro, 89 F.3d 1443, 1456 (11th Cir. 1996), cert. denied, 519 U.S. 1118, and cert. denied, 520 U.S. 1182 (1997)).

### III. The "Pay for Play" Scheme

The case before this Court is akin to the facts presented in companion cases United States v. Sawyer, 85 F.3d 713 (1st Cir. 1996) (Sawyer I),[4] United States v. Sawyer, 239 F.3d 31 (1st Cir. 2001) (Sawyer II),[5] and United States v. Woodward, 149 F.3d 46 (1st Cir. 1998), cert. denied, 525 U.S. 1138 (1999). Sawyer, a lobbyist for a large insurance company who had long-term ongoing interests in official actions, was convicted of honest services fraud arising from his corrupt relationships with various members of the State legislature, including Woodward, over a nine-year period. These corrupt relationships were advanced by Sawyer's "entertaining expenses," including out-of-state trips, spent on more than 25 legislators, totaling approximately $35,000. 239 F.3d at 47. He explained these expenditures were necessary to "build and maintain relationships" with the legislators, to cultivate 'a certain relationship so that you could turn to them," and to gain access to them. 85 F.3d at 722.

---

[4] The Eleventh Circuit relied on this case in Lopez-Lukis, 102 F.3d at 1169.

[5] The court in United States v. Sawyer, 85 F.3d 713 (1st Cir. 1996) (Sawyer I), vacated Sawyer's convictions because the jury instructions might have allowed the jury to convict Sawyer on an improper basis. On remand, Sawyer pled guilty. After satisfying his punishment, he filed a writ of error coram nobis, and the District Court vacated his plea. The Court of Appeals vacated that judgment in United States v. Sawyer, 239 F.3d 31 (1st Cir. 2001) (Sawyer II).

The court in Sawyer I acknowledged the typical or classic concept of honest services fraud: (1) bribery, where a public official is paid for a particular decision or act; and (2) the official's failure to disclose a particular decision or act. 85 F.3d at 724. The court recognized, however, that the facts before it did not neatly fit into either category, as follows:

> The government must prove that the conduct was accompanied by the requisite intent. This intent could be shown in a number of ways. For example, a bribery-like, corrupt intent to influence official action necessarily is an intent to deprive the public of an official's honest services. A person might not, however, give an unlawful gratuity with the intent to effect a specific quid pro quo. Rather, as the government contends here, a person with continuing and long-term interests before an official might engage in a pattern of repeated, intentional gratuity offenses in order to coax ongoing favorable official action in derogation of the public's right to impartial official services. . . . Here, for example, while Sawyer may not have provided the legislators with direct kickbacks or commissions arising out of the specific official action, he may have intended the legislators generally to treat preferentially [his company's] interests, knowing that the free meals, entertainment, and golf would continue so long as favorable official acts were, at some point, taken.

85 F.3d at 730. Thereafter, the court in Woodward articulated the following framework of the elements of § 1346: "In Sawyer [I], we noted two of the ways that a public official can steal his honest services from his public employer: (1) the official can be influenced or otherwise improperly affected in the performance of his duties; or (2) the official can fail to disclose a conflict of interest, resulting in personal gain." 149 F.3d at 57 (citation omitted). It summarized, "The Sawyer case expanded category (1) from quid pro quo bribery, to include a more generalized pattern of gratuities to coax 'ongoing favorable official action.'" 149 F.3d at 55 (quoting Sawyer I, 85 F.3d at 730).

In Sawyer II, the court reaffirmed that honest services fraud does not require proof of a violation of any state law because the duty of honest services owed by public officials derives from fiduciary duties at common law as well as from Section 1341. 239 F.3d at 41-42. The court further rejected the argument that the quid pro quo requirement for a Section 201 offense should be applied

to the honest services fraud charge.

> While Sun-Diamond does not specifically mention § 1341, to read that opinion as affecting the well-settled interpretation of § 1341 would be inconsistent with its rationale. The Supreme Court partly based its decision in Sun-Diamond on a desire to read § 201, the gratuity statute, in a way that made sense given the "intricate web of regulations, both administrative and criminal, governing the acceptance of gifts" by public officials. Sun-Diamond, 526 U.S. at 409, 119 S.Ct. 1402. The Court noted specifically, "we ought not expand this one piece of the regulatory puzzle so dramatically as to make many other pieces misfits." 526 U.S. at 412, 119 S.Ct. 1402.

239 F.3d at 40 n.8.

The Eleventh Circuit has embraced the culminating concept of honest services fraud presented in this trilogy, that is, a more generalized pattern of gratuities or bribes to coax ongoing favorable official action. The facts of Lopez-Lukis fall within the gambit of such a "pay for play" scheme. There, the Eleventh Circuit upheld an indictment charging a lobbyist and county commissioner for a scheme in which the lobbyist paid the commissioner for her votes for projects favored by the lobbyist and for her influence and actions attempting to control the composition of the commission to ensure that the interests of the lobbyist's clients would continue to receive majority votes. The court characterized this corrupt activity as "a broad bribery scheme: . . . pa[y] . . . for political favors." 102 F.3d at 1168. In finding that Sections 1341 and 1346, as construed by its interpretation of the parameters of Section 1346, reach such a bribery scheme, the Eleventh Circuit declared, "[s]urely, section 1346 was intended to prohibit just this sort of conduct. . . ." Id. at 1170.

**IV. Conclusion**

The allegations in this Motion are appropriately presented only in a Rule 29 motion at the

7

conclusion of the Government's case-in-chief.[6] Thus, this Motion should be denied because it is premature. Moreover, Defendant Hamrick's argument that his conduct cannot constitute honest services fraud absent a showing of a quid pro quo has no merit as a matter of law. Eleventh Circuit jurisprudence does not require such a showing. Consequently, this Court should deny the Motion.

---

[6]The Government also disagrees with Hamrick's most fundamental assumption: that the second superceding indictment charges that he deprived the State of Alabama of only his own honest governmental services, even during the periods in which he was not a governmental official, but a private citizen. Motion, at 3, n. 3. As Counts Ten through Fourteen specify, Defendant Hamrick is also charged, pursuant to 18 U.S.C. § 2, with having aided and abetted Defendant Siegelman in the commission of honest services fraud. Thus, he is also charged with having fraudulently deprived the State of Alabama of Defendant Siegelman's honest services during the entirety of the indictment period. The Government's position in this regard is presented more fully in its Response to Defendant Hamrick's Motion in Limine to Bar Evidence and Argument that Mr. Hamrick Deprived the State of Alabama or the Public of Governor Siegelman's Honest Governmental Services During the Period when Mr. Hamrick was a Private Citizen.

Respectfully submitted this the 10th day of April, 2006

| | |
|---|---|
| LOUIS V. FRANKLIN, SR.<br>ACTING UNITED STATES ATTORNEY | ANDREW C. LOURIE<br>ACTING CHIEF, PUBLIC INTEGRITY SECTION |

/s/ Louis V. Franklin, Sr.
Acting United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: louis.franklin@usdoj.gov

/s/ J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J

/s/ Jennifer Garrett
Special Assistant United States Attorney
Assistant Attorney General
Office the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-8494
Fax:    (334)242-4890
Email: jgarrett@ago.state.al.us
ASB-4600-T77J

/s/ Stephen P. Feaga
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: steve.feaga@usdoj.gov
ASB-7374A60S

/s/Richard C. Pilger
Department of Justice, Criminal Division
Public Integrity Section
10th & Constitution Ave, NW
Bond Building - 12th Floor
Washington, DC 20530
Phone: (202)514-1412
Fax:    (202)514-3003
Email: richard.pilger@usdoj.gov

/s/ Joseph L. Fitzpatrick, Jr.
Special Assistant United States Attorney
Assistant Attorney General
Office of the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-4839
Fax:    (334)242-4890
Email: j.fitzpatrick@ago.al.state.us

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| vs. | ) | CR. NO. 2:05-cr-119-MEF |
| | ) | |
| DON EUGENE SIEGELMAN, | ) | |
| PAUL MICHAEL HAMRICK, | ) | |
| GARY MACK ROBERTS, and | ) | |
| RICHARD M. SCRUSHY. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY

/s/ Louis V. Franklin, Sr.
LOUIS V. FRANKLIN, SR.
Acting United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
louis.franklin@usdoj.gov