IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DON EUGENE SIEGELMAN | ) | CRIMINAL NO. 2:05-CR-119-MEF |
| PAUL MICHAEL HAMRICK | ) | |
| GARY MACK ROBERTS | ) | |
| RICHARD M. SCRUSHY | ) | |

### UNITED STATES' RESPONSE TO DEFENDANTS' MOTIONS TO SUPPLEMENT RECORD IN JURY CHALLENGE HEARING

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting United States Attorney for the Middle District of Alabama, and Andrew C. Lourie, Acting Chief of the Public Integrity Section of the Criminal Division of the United States Department of Justice, and hereby files its Response to Defendant Scrushy's Amended Second Motion to Supplement Record in Jury Challenge and Request for Additional Data (Doc. 392-1) and the Court's Order to show cause why the Motion should not be granted (Doc. 394). The United States also includes it response to Defendant Scrushy's Motion to Supplement Record in Jury Challenge Hearing (Doc. 349).

In the May 8, 2006 Motion, consistent with prior motions, Defendants move to supplement again the post-hearing record,[1] now with a new Statement of Dr. James Gundlach[2] and related exhibits. Defendants also now request more records that they claim are necessary to complete the record in regard to the 2005 Qualified Jury Wheel. The request for additional data

---

[1] Prior post-hearing requests are found at Doc. 349 and 373.

[2] Attached to May 8, 2006 Motion as Exhibit B.

should be denied because it is outside the scope of the Court's original discovery order and would not even aid the Court's decisional process in this case. Defendants' April 16, 2006 Motion to Supplement also should be denied because it constitutes an impermissible, unnecessary, and unfair effort to supplement the record.

To support its position, the United States submits the following:

**I.     Defendants' May 8, 2006 Request for Additional Records Is Outside the Narrow Scope of the Court's Prior Order and Should Be Denied.**

In their May 8, 2006 Motion, Defendants request leave to further supplement the post-hearing record. This request, however, is outside the narrow scope of the Court's prior Order. Based upon the United States' understanding and belief, the Court's prior oral Order limited post-hearing discovery solely to information regarding the pool reports for this case and one other pool selected from the 2005 qualified jury wheel. The Defendants, however, now request: "The participant history file selected for all transactions occurring after August 24, 2005, NOT restricting inclusion based on Participant Number." (Motion, at 5.)  Defendants request these additional records because, they contend, there may be additional 2001 Qualified Jury Wheel members who are currently still included in the 2005 Deferred Maintenance Pool. This request should be denied.

First, the Court has already granted Defendants the extraordinary measure of receiving additional evidence after a four day evidentiary hearing. The Court should not extend this exception beyond the narrow scope of its Order.

Second, the production of additional data would not even aid the Court's decisional process in this case. The Clerk has researched the inclusion of the ten 2001 Qualified Jury Wheel members in the seven 2005 jury pools and discovered that these ten jurors had been

selected from the 2001 Qualified Jury Wheel to be on a 2001 pool; that they had requested deferrals; that, when granted those deferrals and designated as "deferred" in the JMS computer system, the 2001 Qualified Jury Wheel was no longer active and, therefore, by their deferred status, they were placed in the Deferred Maintenance Pool then in existence, the 2005 Deferred Maintenance Pool. The Clerk, after reviewing the entire 2005 Deferred Maintenance Pool, has confirmed that there are no additional 2001 Qualified Jury Wheel participants in the 2005 Deferred Maintenance Pool as of May 10, 2006. See Elmore Aff. at 6. (Attachment A.)

Furthermore, the Court should not consider the erroneous inclusion of the ten 2001 Qualified Jury Wheel members as a substantial violation of the JSSA or the Middle District's Plan. Their inclusion is not indicative of a failure to empty the 2001 Qualified Jury Wheel. In addition, as the attached affidavit of Mr. Elmore makes clear, the inclusion of these deferred jurors had no appreciable impact on the racial composition of the seven 2005 jury pools in which they were included and no impact on the randomness of the jury selection process. See Elmore's Aff. at 5-6.

After reviewing the latest data the Clerk supplied, the Defendants continue to look to the individual pools to measure absolute disparity. The racial composition of an individual pool or pools, however, is not representative of the racial composition of the entire wheel. As was the case with the 2001 Qualified Jury Wheel, an actual count of the entire 2005 Qualified Jury Wheel at one point in time is provided by a race/gender report – that of February 2006, which shows that the percentage of African-Americans on the 2005 Qualified Jury Wheel is 21.18 %.

Defendants further utilize the selections of the latest two pools to attempt to buttress their argument that the Jury Administrator treats previously deferred jurors in a non-random and

preferential manner. They concluded, from the facts that only 2% of one pool was from the Deferred Maintenance Pool while Defendants' pool contained 9.667%, that the Jury Administrator is changing the percentage of jurors pulled from the Deferred Maintenance Pool for a particular jury pool from the 10% setting, contrary to her testimony. First, the Plan's provision that no more than 15% of a pool be drawn from the Deferred Maintenance Pool has not been violated. Furthermore, a most logical explanation accounts for the 2% figure -- the 2005 Deferred Maintenance Pool is not large enough yet to supply, with any consistency, each jury pool with 10% previously deferred jurors.

Therefore, because this request would not even aid the Court in its decision-making process and it is untimely, the Court should deny the request.

## II. The April 16, 2006 Motion to Supplement Should Be Denied Because It Constitutes an Impermissible, Unnecessary, and Unfair Effort to Supplement the Record.

### A. *The April 16, 2006 Motion Is an Untimely and Unnecessary Attempt to Supplement Issues That Should Have Been Addressed During the Hearing.*

Defendants' April 16, 2006 Motion to Supplement, along with the attached affidavit of Dr. James H. Gundlach,[3] constitutes an impermissible and unfair effort to supplement the evidentiary record developed at the four-day evidentiary hearing. In their April 16, 2006 Motion, Defendants admitted that they are attempting to supplement and clarify Gundlach's testimony given at the hearing regarding the 2001 Qualified Jury Wheel. Put another way, Defendants are now attempting to inject into that record additional testimony concerning the percentage of African-Americans in the 2001 Qualified Jury Wheel – an issue which they had

---

[3] Attached to the April 16, 2006 Motion as Exhibit A.

4

every opportunity to address fully and testimony they had every opportunity to introduce, at that evidentiary hearing.

This supplementation should not be permitted. Not only could Defendants have presented this evidence at the time of the hearing,[4] the issue was addressed during the hearing. In fact, the Court itself noted that Dr. Gundlach was evasive on this very issue, which he is now trying to supplement and clarify. As a result, the supplemental post-hearing affidavit is nothing more than an attempt to buttress a weakness in the defense's case. Such an untimely tactic should not be permitted. See, e.g., Shapiro, Lifschitz & Schram, P.C. v. Hazard, 90 F. Supp. 2d 15, 17 (D.D.C. 2000) (in striking a post-evidentiary hearing affidavit of a witness as untimely, the court explained, "The Court expected that in holding an evidentiary hearing, the parties would present all their evidence at the hearing because such a forum provides a fair opportunity for the parties to present their evidence and cross-examine opposing witnesses."); Dudo v. Schaffer, 93 F.R.D. 524, 528 (E.D. Pa. 1982) (citing to Jones v. Menard, 559 F.2d 1282, 1285 n.4 (5th Cir. 1977)) (other citations omitted) (in the summary judgment context, noting that "It is well established that the court need not consider affidavits submitted on the day of, or after, hearing."). The Motion should be denied.

     B.    *The April 16, 2006 Motion Should Be Denied Because It Would Unduly Prejudice the United States' Cross Examination Rights.*

The Court should also deny the Motion because consideration of this affidavit would unduly prejudice the Government. The absence of cross-examination regarding Dr. Gundlach's conclusions in his affidavit and the analysis he used to make those conclusions alone compels

---

[4] Moreover, Defendants, though they have the ultimate burden of proof, did not have Dr. Gundlach present in court on the final day of the evidentiary hearing.

the denial of the Motion.  See, e.g., Pace Shipping Services Network SA v. M/V Ocean D.  No. Civ. A. 00-0475, 2003 WL 1733544, *4 (E.D. La. March 28, 2003) ("[The plaintiff] has not been given the benefit of confrontation to question the affiant about statement contained in her [post-hearing] affidavit . . . .  Without that right, without approaching the veracity or truthful nature of her statements contained in the affidavit, this Court finds that the proper course of action is to grant the motion to strike as to the additional affidavit . . . .")  The United States has had not an opportunity to cross-examine Dr. Gundlach's new clarifying and supplementary claims regarding a matter that is fundamental to the Court's resolution of these jury selection issues.

  Even a cursory reading of Dr. Gundlach's affidavit evidences a number of significant flaws, which should be addressed on cross examination.  For example, Dr. Gundlach promotes a minimal margin of error.  Yet, that margin is calculated on a host of variable, e.g., the inherent fluctuation of the size of the 2001 Qualified Jury Wheel, the variables sizes of the 92 samples, and the 92 different points in time the samples were drawn.  At best, any one of these variables, if properly considered, would increase the margin of error and, considered together, would exponentially increase that margin of error.  In fact, given that even Dr. Gundlach admits that the 2001 Qualified Jury Wheel cannot be adequately reconstructed at any given point in time (other than the date of the JS-12, January 17, 2002, and at the end of the 2001 Qualified Jury Wheel, August 2005), the United States submits that no margin of error can be calculated with any reliability for the calculation Dr. Gundlach attempts to perform.  Moreover, Dr. Gundlach's conclusion incorporates the principle that each sample is representative of the 2001 Qualified Jury Wheel.  Yet, he fails to reckon with the fact that the samples do not reflect an all-inclusive

Qualified Jury Wheel, for the population from which these samples were drawn did not include any juror who was not then eligible for selection.

These flaws should be addressed by way of cross-examination of the expert and the Court's own questioning, not left to inference or to "dueling" counter-affidavits of the experts <u>ad nauseam</u>. <u>See</u> <u>Sanders v. Monsanto Co.</u>, 574 F.2d 198, 199-200 (5th Cir. 1978)[5] ("[If a proceeding] is highly factual, approximating a trial on the merits . . . evidence ought to be presented in the method most consistent with arriving at the truth.  Historical experience has taught us that testimonial evidence has the highest reliability because the credibility of the witness can be evaluated, and the factual issues narrowed by cross-examination.  Because the [particular] proceedings depend so heavily on complex facts not readily perceivable from the record, an oral hearing . . . is necessary."); <u>United Commercial Ins. Service, Inc. v. Paymaster Corp.</u>, 962 F.2d 853, 858 (9th Cir.) ("Where factual questions are not readily ascertainable from the declarations of witnesses or questions of credibility predominate, the district court should hear oral testimony . . . .  Where . . . the primary issue before the court is a legal question, and what factual issues do exist are undisputed, we think little purpose would be served by a blanket rule requiring oral testimony."), <u>cert</u>. <u>denied</u>, 506 U.S. 1022 (1992).  Defendants' motion likewise should be denied.

---

[5] <u>See</u> <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (<u>en banc</u>) (adopting as binding precedent all decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981).

**III.    Even if the Court Were to Accept the Motion and Supplement the Record with the April 16, 2006 Affidavit, the Additional Data Does Not Support a Violation of the JSSA or the Plan.**

Even if the Court were to accept the Motion and supplement the record with Dr. Gundlach's April 16, 2006 affidavit, Gundlach's new proposed findings do not support a violation of the JSSA or the Middle District's Jury Plan. As Mr. Elmore's expert report indicates (Attachment A), even with Dr. Gundlach's supplementary reports the JSSA and Jury Plan were not violated.

**IV.    Conclusion**

In conclusion, the Motions should be denied. Defendants have been permitted to conduct an extraordinary amount of discovery. Any new discovery at this point is unfair, untimely, and would not aid the Court to make a decision in this case. Moreover, Dr. Gundlach's first supplemental post-hearing affidavit should not be considered as evidence, and should not be made part of the record in this case.

Respectfully submitted this 23rd day of May, 2006.

| | |
|---|---|
| LOUIS V. FRANKLIN, SR. <br> ACTING UNITED STATES ATTORNEY | ANDREW C. LOURIE <br> ACTING CHIEF, PUBLIC INTEGRITY SECTION |
| /s/ Louis V. Franklin, Sr. <br> Acting United States Attorney <br> One Court Square, Suite 201 <br> Montgomery, AL 36104 <br> Phone: (334) 223-7280 <br> Fax: (334) 223-7560 <br> Email: louis.franklin@usdoj.gov | /s/Richard C. Pilger <br> Department of Justice, Criminal Division <br> Public Integrity Section <br> 1400 New York Ave. NW <br> Bond Building, 12th Floor <br> Washington, DC 20530 <br> Phone: (202) 514-1412 <br> Fax: (202) 514-3003 <br> Email: richard.pilger@usdoj.gov |
| /s/ J.B. Perrine <br> Assistant United States Attorney <br> One Court Square, Suite 201 <br> Montgomery, AL 36104 | |

Phone: (334) 223-7280
Fax: (334) 223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J

/s/ Jennifer Garrett
Special Assistant United States Attorney
Assistant Attorney General
Office the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334) 353-8494
Fax: (334) 242-4890
Email: jgarrett@ago.state.al.us
ASB-4600-T77J

/s/ Stephen P. Feaga
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7560
Email: steve.feaga@usdoj.gov
ASB-7374A60S

/s/ Joseph L. Fitzpatrick, Jr.
Special Assistant United States Attorney
Assistant Attorney General
Office of the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334) 353-4839
Fax: (334) 242-4890
Email: j.fitzpatrick@ago.al.state.us

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DON EUGENE SIEGELMAN | ) | CRIMINAL NO. 2:05-CR-119-MEF |
| PAUL MICHAEL HAMRICK | ) | |
| GARY MACK ROBERTS | ) | |
| RICHARD M. SCRUSHY | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 23rd, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted this 23rd day of May 2006.

/s/ J.B. Perrine
J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J