IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Case No. 2:05-cr-119-MEF |
| | * | |
| PAUL MICHAEL HAMRICK | * | |

**MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO
FED. R. CRIM. P. 29 ON COUNT FIFTEEN – 18 U.S.C. § 1512(b)(3)
OBSTRUCTION OF JUSTICE**

Section 1512(b)(3) is about what a defendant does to a person who communicates with federal authorities. The defendant must engage in misleading conduct toward the person, "corruptly persuade" him, or attempt to "corruptly persuade" him.

The prosecution charged Mr. Hamrick with doing those things to Mr. Young. But its evidence conclusively establishes that Mr. Hamrick did not do them. Mr. Young testified only that Mr. Hamrick gave him a check and that Mr. Hamrick said it was for his half of a stock investment. Mr. Young did not say that Mr. Hamrick engaged in misleading conduct toward him or tried to persuade him to do anything. Mr. Young testified that he called his lawyer (Mr. Glassroth), asked if it was okay to take the check, and that Mr. Glassroth said yes.

The only other testimony Mr. Young gave – in response to a series of improper questions that lacked basic evidentiary foundation – was that he thought Mr. Hamrick was making "an attempt to cover up" when he wrote the check. In its pretrial filings, the prosecution argued that Mr. Hamrick violated § 1512(b)(3), not by misleading or corruptly persuading Mr. Young, but by giving the check to Mr. Young in order to mislead federal investigators. That is not what the indictment charged, and it is not the law. Even if what Mr. Young thought were relevant (which

it is not) and his testimony were properly admissible (which it was not),[1] section 1512(b)(3) does not cover a general attempt to structure a transaction to "cover up" or mislead federal investigators.

## I. THE CHARGE

18 U.S.C. § 1512(b)(3) forbids a defendant to engage in, among other things, "misleading conduct" and/or "corrupt persuasion" directed at "another person" who speaks – or is to speak – to federal authorities. It provides:

> Whoever knowingly . . . corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to –
>
> \*             \*             \*             \*
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . .
>
> shall be fined under this title or imprisoned . . . or both.

In the second superseding indictment, the prosecution contends that the "[]other person"

---

[1] The testimony, including the improper questions and Mr. Hamrick's counsel's objections to them, are set forth in full below. To the extent that the Court deems the questions relevant and admissible, and if, for any reason, the Court views the testimony as establishing a section 1512(b)(3) offense, Mr. Hamrick moves for acquittal based on the improper questions. They lacked the necessary evidentiary foundation, were not proper, and should not have been permitted. Moreover, they do not establish the state of mind the prosecution apparently hoped to establish. Mr. Young testified, in response to the improper questions, that he had a conversation with Mr. Hamrick about the existence of the investigation (the substance of which he did not relate) and a conversation when Mr. Hamrick gave him the check. Mr. Young testified, in response to the improper questions, that based on those conversations he believed Mr. Hamrick was making an "attempt to cover up." Without the substance of the conversation about the existence of the investigation, there was no proper foundation for Mr. Young to testify to his belief. This is an additional basis for acquittal and Mr. Hamrick so moves.

was Mr. Young. It alleges:

> On or about October 9, 2001, in the Middle District of Alabama, the defendant PAUL MICHAEL HAMRICK did knowingly corruptly persuade another person and attempt to knowingly corruptly persuade another person, and did engage in misleading conduct toward another person, with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission of a federal offense and a possible commission of a federal offense, to wit, defendant PAUL MICHAEL HAMRICK did give a check in the amount of $3,000 to Clayton "Lanny" Young with intent to hinder, delay, and prevent communication to the Federal Bureau of Investigation by Clayton "Lanny" Young of information concerning federal offenses related to $6,000 that Clayton "Lanny" Young gave to PAUL MICHAEL HAMRICK on September 25, 2000.

*Second Superseding Indictment* ¶¶ 34, 66.

## II. THE EVIDENCE

Mr. Young testified as follows on direct examination:

Q. Mr. Young, earlier in your testimony, you identified this check dated September the 25th, 2000, for $6,000 to Paul Hamrick. Do you remember testifying about that check?

A. I do.

Q. I'd like to show you what's been marked as Government Exhibit #189A-24 for identification purposes and ask you if you would take a look at it.

\*              \*              \*              \*

Q. Have you had a chance to look at it, Mr. Young?

A. I have.

Q. May I retrieve it from you?

A. Yes.

Q. Would you tell the ladies and gentlemen of the jury what that is?

A. It's a check from Paul Hamrick, a personal check from Paul Hamrick, Southtrust Bank, to myself in the amount of $3,000, date of 10/9/01, and a deposit

slip into my – where I deposited into my account at Colonial, $3,000.

\*            \*            \*            \*

Q. Now that's a check from Paul Hamrick to you?

A. It is.

Q. For $3,000?

A. It is.

Q. And the date on the check is October the 9th, 2001?

A. It is.

Q. At the time that Paul Hamrick wrote that check to you, were you aware that the Federal Bureau of Investigation was involved in a criminal investigation into activities that involved you?

A. I was.

Q. Now, I think you testified earlier that you became aware of that investigation shortly after the GH project melted down; is that right?

A. It is.

Q. And you were aware of it on June the 5th, 2001, when you got the check from Mr. Bailey?

A. I was.

Q. Had you talked to Nick Bailey prior to the time that he wrote you the check for $10,503 about the fact that there was a federal investigation underway?

A. Yes.

Q. Had you talked to Paul Hamrick about it prior to the time that you received this check on October the 9th, 2001?

A. I had.

Q. Would you tell the ladies and gentlemen of the jury the circumstances under which Mr. Paul Hamrick wrote a check to Lanny Young on October the 9th, 2001,

4

for $3,000?

A. Paul called me one day and said if I would come by his office, he had a check.

Q. And did you go by his office?

A. I did.

Q. What, if anything, did he say to you when you got there?

A. He said, Here's my $3,000 for my half of our stock investment.

Q. Had you bought any stock with Paul Hamrick at any time prior to that time?

A. No.

Q. Why did Paul Hamrick give you that check, if you know?

MR. DEEN: I'll object to the mental operation of a third party.

THE COURT: Overruled.

Q. Tell the ladies and gentlemen of the jury why Paul Hamrick gave you that check for $3,000 on October the 9th –

MR. DEEN: Judge, I don't object to something Mr. Hamrick may have said; but just him saying why, I'll object.

THE COURT: Sustained.  Without him establishing the foundation, your first question was –

MR. FEAGA: Yes, sir.

Q. What was your understanding of why Paul Hamrick gave you that check for $3,000 on October the 9th, 2001?

MR. DEEN: Object to the form of the question.

THE COURT: Sustained.

Q. Had you bought any stock with Paul Hamrick at any time prior to the time he gave you that check?

A. No.

5

Q. Do you know what he was talking about when he said to you, this for my half of the stock we bought together?

A. Yes. He was referring to this check that he said –

MR. DEEN: Object to what he was referring to unless he can lay some foundation as to how he would know what would be inside Mr. Hamrick's mind, Your Honor.

THE COURT: Sustained.

Q. Based on your conversation with Paul Hamrick, did you have an understanding of why he was giving you this $3,000 check on October the 9th, 2001?

MR. DEEN: Judge, again, I would object as to if he's – he's talking about an understanding with Mr. Hamrick, unless he lays some foundation. If it's about what this witness understood in his own mind, I don't object.

THE COURT: Overruled.

Q. Would you tell the ladies and gentlemen of the jury, based on your conversations with Paul Hamrick both about the existence of the investigation and what he told you on the day he gave you this check, what was your understanding why he gave you this check for $3,000 on October the 9th, 2001?

A. It was just like the check from Nick. It was an attempt to cover up the $6,000.

*Young Direct Testimony, May 17, 2006,* 198/7 – 205/14.

On cross-examination, Mr. Young testified:

Q. The $6,000 loan – or, excuse me – payment you made to Paul you mentioned was in September of 2001?

A. I believe that's correct.

Q. 2000 – maybe it was 2000. I'm sorry. And that was for a payment on a Sterne Agee account?

A. That was what he asked me for, yes.

Q. And you were familiar with what that was all about?

A. Well, I'm familiar with what Paul told me he was doing.

Q. All right. Well, let me ask you this. Trava Williams. You remember him, don't you?

A. I do know Trava Williams.

Q. He's a stockbroker, right?

A. He is.

\*          \*          \*          \*

Q. All right. You had an account with Sterne Agee?

A. I had an account with Trava Williams. Whether it was Sterne Agee or the other company he was with, I'm not sure which.

Q. That's right. He had two companies. He worked with Sterne Agee and he had his own private company, didn't he?

A. I think that's correct, yes.

Q. And he would – he got people like yourself. He got Paul Hamrick. He got Nick Bailey involved in different things, didn't he?

A. I can't speak for those folks.

Q. All right. Well, you know when Paul talked to you about needing $6,000, you knew what he was talking about, didn't you?

A. Paul told me why he needed $6,000, yes, sir.

Q. All right. And you gave it to him?

A. I gave it to him.

Q. And he has since paid you back 3,000 on that?

A. He has since given me back 3,000 on that, that's correct.

Q. And, in fact, when he – I think you said he came to your office – I mean – excuse me. You went to his office; and he said here's $3,000 for your half of this deal, correct?

>A. That's correct.
>
>Q. And then you called up your lawyer, Mr. Glassroth, and asked him is it okay if I take this money, didn't you?
>
>A. I did.
>
>Q. And he told you yes?
>
>A. That's right.

*Young Testimony on Cross-Examination, May 17, 2006* 251/14 – 252/5; 253/9 – 254/18.

### III.  THE LAW

The case law interpreting the "misleading conduct" and "corrupt persuasion" provisions of § 1512(b)(3) developed as a result of changes Congress made to the federal obstruction-of-justice statutes beginning in 1982.  Before 1982, former 18 U.S.C. § 1503 broadly forbade "corrupt" attempts to "influence, obstruct, or impede the due administration of justice," including by tampering (in virtually any way) with witnesses.  *See, e.g., United States v. King*, 762 F.2d at 237-38; *United States v. Ladum*, 141 F.3d 1328, 1337 (9th Cir.1998).  In 1982, Congress passed the Victim and Witness Protection Act.  *Pub. L. No. 97-291, 96 Stat. 1249.*  The Act removed all express references to witnesses in former § 1503 and enacted a new § 1512, addressed specifically to the influencing of witnesses, victims, and informants.  *Id.*

As originally drafted, the new § 1512 had a residual, catch-all provision that would have reached any person who – by action directed at a witness, victim, or informant – "corruptly . . . [and] intentionally influences, obstructs, or impedes, or attempts to influence, obstruct, or impede the . . . enforcement and prosecution of federal law."  *S. 2420, 97th Cong., 2d Sess.*, *sec. 201(a), § 1512(a)(3), 128 Cong. Rec. S. 11,439* (daily ed. Sept. 14, 1982).  The Senate Judiciary Committee's report on this original version of § 1512 stated that this catchall provision was

intended to reach, among others, "a person who induces another to remain silent or to give misleading information to a Federal law enforcement officer . . . irrespective of whether he employed deception, threat, or force as to the person." *S. Rep. No. 532, 97th Cong., 2d Sess. 18* (reprinted in 1982 U.S. Code Cong. & Admin. News 2515, 2524.

But, when Congress passed the new § 1512, it deleted the catch-all provision, leaving only specific prohibitions. Section 1512(b)(3) therefore read, when passed, as follows:

> Whoever knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to –
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . .
>
> shall be fined under this title or imprisoned . . . or both.

### A. **Misleading Conduct**

Questions arose almost immediately whether and under what circumstances § 1512(b)(3) prohibited payments to witnesses. In *United States v. King*, 762 F.2d 232, 237-38 (2d Cir. 1985), the Second Circuit held that the phrase "misleading conduct" did not criminalize a "non-misleading, non-threatening, non-intimidating attempt to have a person give false information to the government," 762 F.2d at 238, and thus that offering money to a witness, and asking him to lie, did not violate § 1512(b)(3) because the witness was not misled.

> By its terms, § 1512 does not purport to reach all forms of tampering with a witness, but only tampering by specified means, *i.e.*, by use or attempted use of "intimidation" or "physical force" or "threat[]" or by "engaging in misleading conduct toward another person." . . . No rational juror could conclude from the [relevant] conversations – in which King urged Orgovan that the two should stick together, that Orgovan should not implicate King but only Dennis, and that Orgovan's silence would be rewarded financially – that Orgovan was in any way misled. Since the evidence failed totally to support any inference that Orgovan

>was, or even could have been, misled, the conduct proven by the government was not within the terms of § 1512.

762 F.2d at 237. The Ninth Circuit in *United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir. 1991) (interpreting the 1982 version of § 1512(b)(3)) held likewise: an offer "to reward [a witness financially] for falsifying his testimony" does not constitute misleading conduct.

Here, Mr. Young did not say that Mr. Hamrick even did as much as the defendants in *King* and *Kulczyk*. He did not say that Mr. Hamrick asked him to lie, to falsify evidence, to withhold evidence, or to do anything whatsoever.

Nor did Mr. Young say that Mr. Hamrick did what the defendants in *United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998), *cert. denied* 526 U.S. 1147 (1999) did. The *Veal* defendants were police officers seeking to thwart a federal investigation into civil rights abuses they had committed when they killed an alleged drug dealer. When they returned to the station after the incident, they misled police personnel about the investigation, knowing that those personnel would pass on the false information to authorities investigating the incident.

>[The defendants] used deception to thwart the investigation. . . by creating false and misleading information, which they related to state investigators with the knowledge that this information would be related to and relied upon by other investigators. To ensure that they would be exonerated of any wrongdoing . . ., they further used police officers and personnel, such as the technician photographer . . ., who they either knew would be or likely would be witnesses in the . . . investigation, as conduits to create false and misleading evidence about events resulting in [the crime]. FBI agents who were investigating the possible commission of a civil rights crime were among the investigators who learned of and relied upon this contrived information and evidence provided by [the defendants].

153 F.3d at 1247.

Mr. Young testified only that Mr. Hamrick said "Here's my $3,000 for my half of our stock investment." Mr. Young did not say that this statement misled him in any way. He said

only that he thought it was an attempt to cover up.

Congress amended § 1512(b)(3) in 1988 to add the "corrupt persuasion" language (see below), but it left the "misleading conduct" provision untouched.  That provision therefore has the same meaning *King* and *Kulczyk* gave it.  Under *King* and *Kulczyk*, the prosecution has failed to prove Mr. Hamrick engaged in misleading conduct.

### B.  Corrupt Persuasion

In the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, Congress amended § 1512(b)(3) specifically to deal with *King's* holding that the statute did not criminalize a "non-misleading, non-threatening, non-intimidating attempt to have a person give false information to the government."  762 F.2d at 238.  Senator Biden explained, in his floor statement, that the new § 1512(b)(3) would provide "protection of witnesses from non-coercive influence."  *134 Cong. Rec. S17,369 (1988)* (statement of Senator Biden).  Congress did so by adding the words "or corruptly persuade" into the language of § 1512(b)(3), so that it now reads as quoted in section I of this motion.  The point was "to prohibit attempts to 'corruptly persuade' a prospective witness to engage in certain obstructive activities."  *United States v. Khatami*, 280 F.3d 907, 912 (9th Cir. 2001).

The new § 1512(b)(3) remains focused on conduct directed at a person who communicates with federal authorities.  The Third Circuit has stated the elements of the "corruptly persuade" violation as follows:

> To obtain a conviction pursuant to 18 U.S.C. § 1512(b)(3), the government must prove that: (1) the defendant attempted to corruptly persuade a person; (2) the defendant was motivated by a desire to prevent the communication between the person and law enforcement authorities concerning the commission or possible commission of an offense; (3) the offense was actually a federal offense; and (4) the defendant believed that the person he attempted to corruptly persuade might

11

      communicate with federal authorities.

*United States v. Guadalupe*, 402 F.3d 409, 412 (3d Cir. 2005). The Ninth Circuit in *Khatami* noted the following definitions of "persuade":

> The verb "persuade" has many definitions, but within the context of § 1512(b)(3) can be understood to mean "to coax," *Oxford English Dictionary* (2d ed. 1989); "to plead with," *Merriam Webster's Collegiate Dictionary* at 868; or "[t]o induce one by argument, entreaty, or expostulation into a determination, decision, conclusion, belief, or the like; to win over by an appeal to one's reason and feelings, as into doing or believing something." *Black's Law Dictionary* at 1144-45.

280 F.3d at 911.

      Decisions in other circuits – including the Eleventh Circuit – confirm that "corruptly persuade" covers conduct directed at a witness or prospective witness:

> *United States v. Shotts*, 145 F.3d 1289, 1299-1301 (11th Cir. 1998). A lawyer under investigation by the FBI told his secretary to "just not say anything and I wasn't going to be bothered." 145 F.3d at 1301. The Eleventh Circuit held that this evidence, though "not overwhelming," permitted an inference "that Shotts was attempting with an improper motive to persuade [the secretary] not to talk to the FBI," and thus supported a charge under § 1512(b)(3). *Id.*

> *United States v. Pennington*, 168 F.3d 1060, 1066 (8th Cir. 1999). The defendant asked a witness to lie to investigators. The court stated that "the ambiguous term 'corruptly persuades' includes 'attempting to *persuade* someone to provide *false* information to federal investigators.'" (citation omitted).

> *United States v. Morrison*, 98 F.3d 619, 629-30 (D.C. Cir. 1996). The defendant asked a witness to lie at a trial. The court held that "[the defendant] tried to 'corrupt' [the witness] by exhorting her to violate her legal duty to testify truthfully in court.

> *United States v. Thompson*, 76 F.3d 442, 452-53 (2d Cir. 1996). The defendant asked a person, who had bought marijuana from him 20 times, "[b]asically just to tell [the grand jury I purchased marijuana from him a couple of times and that was it, just don't tell them anything else other than that." The court held that this constituted corrupt persuasion.

      Nothing in Mr. Young's testimony indicates that Mr. Hamrick made any attempt to

persuade – to "coax," "plead with," or "induce" – Mr. Young to do anything.

### C. "Another Person" Not Federal Authorities

At least in its pretrial motions, the prosecution did not make a serious attempt to argue that it had evidence that Mr. Hamrick did mislead or try to persuade *Mr. Young*. Rather, it argued that Mr. Hamrick could be guilty of a § 1512(b)(3) offense if his conduct toward Mr. Young was designed to mislead *federal investigators*. That is an improper theory. Specifically, the prosecution argued:

> The Eleventh Circuit [in *United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998), *cert. denied* 526 U.S. 1147 (1999))] affirmed the convictions of several defendants under Section 1512(b)(3) because they engaged in "misleading conduct" through "activities designed to create witnesses as part of a cover-up and to use unwitting third parties or entities to deflect the efforts of law enforcement agents in discovering the truth." *Id.* at 1247. The Court described Section 1512(b)(3) as a "broad" statute, *id.* at 1246, and noted that Congress created Section 1512 (as well as Section 1513) to provide for an "entirely new and broader set of obstruction of justice offenses" than was covered by the earlier version of 18 U.S.C. § 1503. *Id.* at 1247 n. 17. Congress' intent in passing Section 1512(b)(3) was to provide "protection against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice.'" *Id.* at 1247 (quoting Victim & Witness Protection Act of 1982, S. Rep. No. 97-532, at 18 (1982), reprinted in 1982 U.S.C.C.A.N. 2515, 2524). Section 1512(b)(3) thus covers any "conduct the function of which is to tamper with a witness, victim, or informant in order to frustrate the ends of justice.'" *Id.*

*Response to Motion to Dismiss* at 3. *Veal* does not stand for what appears to be the prosecution's broad proposition that "activities designed . . . to deflect the efforts of law enforcement agents in discovering the truth" are covered by § 1512(b)(3). Rather, *Veal* stands for the proposition that those activities fall within § 1512(b)(3) if they are aimed at a person who speaks to federal investigators, even if that person is a state investigator.

As Mr. Hamrick pointed out, that argument not only misreads *Veal*, but also relies on the

legislative history for the original version of § 1512, which included the catch-all, residual provision that did not pass. The Second Circuit explained in *King*:

> The government contends that, notwithstanding the actual language of § 1512, Congress meant for § 1512 to reach conduct that was not misleading to the person at whom it was directed but was intended to mislead the government. . . . We are unpersuaded.
>
> *          *          *          *          *
>
> [T]he original bill that led to the enactment of the Act contained, in addition to the eventually enacted enumeration of specific types of conduct to be reached, a catchall section designed to reach any person who "corruptly, by threats of force, or by any threatening letter or communication, intentionally influences, obstructs, or impedes or attempts to influence, obstruct, or impede the . . . enforcement and prosecution of federal law." S. 2420, 97th Cong., 2d Sess., sec. 201(a), § 1512(a)(3), 128 Cong. Rec. S11,439 (daily ed. Sept. 14, 1982). The Senate Judiciary Committee opined that the prevention of obstructions of justice could not be fully carried out by a simple enumeration of the commonly prosecuted obstruction offenses and stated that the residual [or catchall] section was not intended to be limited by the doctrine of ejusdem generis. S. Rep. No. 532, 97th Cong., 2d Sess. 18, *reprinted in* 1982 U.S. Code Cong. & Ad. News 2515, 2524. Thus, the Senate Report stated that the residual section was intended to reach, *inter alios*, "a person who induces another to remain silent or to give misleading information to a Federal law enforcement officer . . . irrespective of whether he employed deception, intimidation, threat, or force as to the person." *Id.* (footnote omitted). ***The residual section, however, was deleted from the Act as finally passed. We agree with the courts in United States v. Lester and United States v. Beatty that the legislative history of § 1512 does not suggest that Congress intended that section, as enacted, to reach modes of conduct other than those enumerated there.***

762 F.2d at 238 (emphasis supplied). The Eleventh Circuit, in *Veal*, cited *King* with approval. 153 F.3d at 1247.[2]

---

[2] "To ensure that they would be exonerated of any wrongdoing . . ., they further used police officers and personnel, such as the technician photographer . . ., who they either knew would be or likely would be witnesses in the . . . investigation, as conduits to create false and misleading evidence about the events resulting in [the crime]. *Cf. United States v. King*, 762 F.2d 232 (2d Cir. 1985)

The prosecution's theory is improper. Section 1512(b)(3) does not prohibit efforts generally to "cover tracks" or "re-create the truth." It prohibits only efforts to mislead or corruptly persuade another person, if that person speaks or is to speak to federal investigators. Mr. Hamrick did not mislead Mr. Young, or try to persuade him to do anything. He therefore is entitled to a judgment of acquittal.

## IV. CONCLUSION

For the foregoing reasons, Mr. Hamrick respectfully requests that the Court grant his motion for judgment of acquittal on count fifteen.[3]

                                              Respectfully submitted,

                                              s/T. Jefferson Deen, III
                                              T. Jefferson Deen, III
                                              T. Jefferson Deen, III, P.C.
                                              P.O. Box 2705
                                              Mobile, Alabama 36652
                                              Phone: (251) 433-5860

---

(observing that § 1512(b)(3) should not have been charged because the alleged misleading conduct, outright subornation of perjury, did not involve any deceptive or misleading conduct). FBI agents who were investigating the possible commission of a civil rights crime were among the investigators who learned of and relied upon this contrived information and evidence provided by [the defendants]." The prosecution, in one of its filings, quibbled over whether the "Cf." cite means "approval." The context of this quotation makes plain that the Eleventh Circuit cited *King* as an example of conduct that was not misleading and thus did not violate the "misleading conduct" prohibition of § 1512(b)(3).

[3]    In addition, if Mr. Hamrick's motion is granted, other portions of the second superseding indictment should be redacted as to Mr. Hamrick: in count one, paragraphs 4d (page 3), 5c (page 4), and 9 (page 5); in count two, paragraph 34 (pages 17 and 18) (Racketeering Act 3).

Fax:    (251) 433-0703
E-mail: TJeffDeen@deenlawpc.com



s/Michel Nicrosi
Michel Nicrosi
Miller, Hamilton, Snider & Odom, L.L.C.
P.O. Box 46
Mobile, Alabama 36601-0046
Phone: (251) 432-1414
Fax:    (251) 433-4106
E-mail: michelnicrosi@mhsolaw.com


**CERTIFICATE OF SERVICE**

I certify that on June 8, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.



s/Michel Nicrosi
Michel Nicrosi
Miller, Hamilton, Snider & Odom, L.L.C.
P.O. Box 46
Mobile, Alabama 36601-0046
Phone: (251) 432-1414
Fax:    (251) 433-4106
E-mail: michelnicrosi@mhsolaw.com